## JORDAN v. MADSEN et al.

No. 4463.   Decided December 30, 1926.   (252 P. 570.)

*Edwin D. Hatch,* of Heber City, for appellant.

*Ben E. Roberts,* of Salt Lake City, for respondents.

STRAUP, J.

This case went off on a demurrer to the complaint containing three causes. Jordan, the plaintiff, appeals. The substance of the first cause is that the defendant Superior Motor Company was a corporation having offices at Salt Lake City and Provo and a branch office at Heber City and was engaged in the business of selling automobiles; that defendant Madsen was the salesman and agent of the company and was authorized to receive in part payment of cars to be sold by him old and used cars of prospective buyers and to fix and determine the value to be allowed and given by the company for such old and used cars as might be received in part payment of new cars to be sold; that on October 5, 1925, at Heber City, the plaintiff, and Madsen in his capacity as salesman, entered into the following contract in duplicate:

"Superior Motor Company,

"42-46 West 4th South Street, Salt Lake City, Utah,

"Phone Wasatch 3538.

"Retail Car Contract.

"October 5, 1925.

"To Superior Motor Co.:

"Please enter the order of the undersigned for one model 1926, type coach or coupe, make Jewett, chassis No........ Spring delivery. To be delivered on or about spring, 1926 (barring delays in transportation or other causes beyond our control), according to the regular specifications of said model and type.

"It is agreed that there are no understandings or representations, express or implied, not specified herein. The guaranty of this sale is that which the factory gives in its printed catalogue, and the un-

dersigned expressly agrees that no claim will be made except as specially provided for in this contract. It is also understood that customers' cars are driven by employees of the seller at the customer's own risk.

"Price subject to change without notice.

Price of car f. o. b. Salt Lake City ......................$........
Equipment optional .......................................$........
Exchange car allowance, consigned for ..................$   900.00
Cash and note total .......................................$........
Cash on delivery .........................................$.........
Amount of note balance........months ..................$........

"Used Car Record.

"Make, Jewett; type, coupe; model 1924.

"Chassis No. 107814; motor No. 718572; model 1924.

"Which used car I or we hereby assign, transfer, sell, and deliver to the Superior Motor Company or its order free and clear of any and all incumbrances.

"Terms of sale are $........on signing of contract, receipt whereof is hereby acknowledged, balance when delivery of car is made.

"Remarks: $500.00 to be paid to J. W. Jordan, the purchaser, when his Jewett coupe is sold; balance of $400 to be left with company as deposit and payment on new car to be delivered in spring, 1926.

"Purchaser: J. W. Jordan.

"Shirley Madsen, Salesman.

"Not valid unless countersigned by manager or sales manager.

        "Address: ........................................

        "...........................Manager."

It is further alleged that at the time of entering into the contract Madsen by phone communicated with the sales manager of the company, who approved the contract; that the plaintiff continued in the possession of the old car mentioned in the contract until December 3, 1925, when an employee and agent of the company got the car from the plain-

tiff at Heber City and drove and delivered it to the company at Salt Lake City; and that the car then was in first class and serviceable condition and ready for immediate use, that between December 3, 1925, and January 1, 1926, the plaintiff at Heber City by telephone inquired of the company at Salt Lake City what was being done with relation to the car, and that the company acknowledged possession of it and reported that it was endeavoring to dispose of it; that on January 4, 1926, the manager of the company wrote plaintiff stating, "that the said company could not perform the contract as herein set forth and wherein an offer of not to exceed $750 was made for the car so taken from the plaintiff as aforesaid, said $750 to be all retained by said company and applied upon the purchase price of a new car to be selected by plaintiff and being handled and sold by said company; that, upon receipt of said letter aforesaid, the plaintiff, still believing that the said company would perhaps perform as agreed, demanded of said company, in writing, that they confirm and reaffirm their said contract aforeherein set forth, within five days, or that the plaintiff would deem their failure so to do a complete breach of said contract; that the said company, on the 7th day of January, 1925, by letter addressed to the attorney for plaintiff, refused to carry out the said contract"; and that no offer was made by the company to return the car to plaintiff, but that it retained and still retains the possession and control of it.

It further is alleged that few if any of the retail car contracts entered into by the company or by its salesmen are countersigned by the manager of the company, and that the general practice and course of dealings of the company was under contracts such as heretofore shown, by the signing of them by the salesmen for and on behalf of the company, and that a branch office was maintained at Heber City in charge of a regular salesman, who placed values upon used cars, taking the same in on trade for other cars, and led people of Heber City and vicinity to believe that the salesman had authority to value and trade for used cars, and that

the values set by the salesman of the company were accepted by the company; that the plaintiff relied upon the authority of Madsen in the premises and upon such reliance entered into the contract; and that the reasonable market value of the old car received by the company from the plaintiff was not less than $900.

For a second cause of action the plaintiff repeated much that is contained in the first cause of action, and in addition thereto averred that the rental value of the old car at the time the company received it was not less than $10 per day. And for a third cause of action plaintiff again repeated much that is alleged in his first cause of action and further averred that by reason of the premises and the matters and things set forth in his complaint, the plaintiff was put to great expense and annoyance and compelled to employ counsel at an expense of $150.

The prayer of the complaint is that the plaintiff, on the first cause of action, recover the sum of $900, together with interest at the rate of 8 per cent per annum from December 3, 1925, until paid, on the second cause of action, the sum of $380 as rental for the car, and, on the third cause of action, $150 for attorney's fees.

The defendants, Madsen and the company, filed a joint general demurrer to the first cause of action, upon the ground that the complaint did not state facts sufficient to constitute a cause of action, and a joint demurrer to the second and third causes of action on the grounds that neither cause stated facts sufficient to constitute a cause of action, and that the damages sought to be recovered therein were uncertain and too remote. The court sustained the demurrers, and upon the plaintiff's refusal to further plead dismissed the action.

From a written opinion filed by the court below, it seems that the demurrer as to the first cause of action was sustained on the theory that by the terms of the contract the company had merely undertaken "to use its best efforts to sell the old car for $900," and, as the contract contained no

time limit, it "could be changed or revoked by either party" at any time; as to the second cause, on the ground that by the contract the old car was intrusted to the company merely for sale and that there was no allegation of any demand by the plaintiff for its return; and as to the third cause, on the ground that, since the contract did not provide for an attorney's fee and none in such case provided by statute, no recovery could be had therefor.

We think the ruling as to the third cause should be affirmed. If the plaintiff is entitled to recover on the first cause of action on the theory of a breach of the contract, as seems to be the theory on which that cause proceeds, he is not entitled to recover also for the reasonable rental value or use of the car. He cannot have both. We thus look to the sufficiency of the allegations of the first cause. The gist of it is to recover damages for a breach of contract—to recover what the plaintiff lost by the company's repudiation of the contract and its refusal to carry it out. The contract is fully set up in the complaint, to which reference has already been made. The execution or affirmance of it by all parties sought to be charged is sufficiently averred. The case did not go off on the theory that the contract was not a subsisting contract as to all of the parties. Looking at the whole and not merely at a part of it, its essential features are that the plaintiff on October 5, 1925, gave an order to the company for or agreed to purchase a new Jewett car to be delivered in the spring of 1926, and that he, as a part of the purchase price, was to have an exchange car allowance of $900 on an old Jewett car, model 1924, which he assigned, transferred, and delivered over to the company; that $500 of such allowance was to be paid plaintiff when the old car was sold and the balance of $400 to be retained by the company and applied on the purchase price of a new car. In accordance with the contract the company at Salt Lake City, on December 3, 1925, sent an agent to Heber City and there received and took possession of the old car and drove it to Salt Lake City and there ever since retained control and pos-

session of it. But on January 4, 1926, the company in writing declared that it could not perform the contract on its part, and made a new offer of "not to exceed $750 for the old car," and to retain and apply the whole thereof on the purchase price of a new car, which offer the plaintiff rejected and insisted that the company carry out the original contract, and notified the company that upon its refusal or failure to do so he would deem such failure a breach of the contract, and on January 7, 1926, the company notified plaintiff that it "refused to carry out" the contract. Thus, whatever the terms of the contract may be, or whatever legal effect may be given it, there is alleged a clear repudiation of it by the company and its refusal to go on with it, a proposed material modification of it by the company and a rejection thereof by the plaintiff, and upon such rejection a further and continued refusal by the company to carry out the original contract.

It, of course, is well settled that a renunciation or repudiation of a contract by one party before the time fixed for performance constitutes a breach and gives an immediate right of action to the adverse party. 5 Page on Contracts, § 2885; 13 C. J. 651. It also is well settled that if one of the parties to a contract notifies the other that he will not perform unless such other assents to a material modification of the contract, or by the addition of new terms, such conduct amounts to a renunciation of the contract. 5 Page on Contracts, § 2904. The breach here as alleged operated as a discharge of the contract, which gave the plaintiff, who was not in default, the right to ignore the contract as a basis of his rights and to sue as he did in quasi contract to recover reasonable compensation for what he furnished in partial performance of the contract (5 Page on Contracts § 3023)—here the value of his old car, alleged to be $900. The renunciation discharged the plaintiff from further performance. 5 Page, §2883; 13 C. J. 653.

The trial court viewed the matter as though the company had received the old car only on consignment and that

it was under obligation only to use its best efforts to sell the car for $900, which provision of the contract could at any time be revoked by either party without affecting other parts of the contract. Seemingly such view was based on the words of the contract, "exchange car allowance, consigned for $900," and upon the provision that $500 was to be paid plaintiff when the old car was sold and the balance of $400 to be applied on the purchase price of a new car. In ascertaining the intention of the parties, the contract must be looked at as a whole, not merely at a part of it, and in connection with the subject-matters contained in the contract and with respect to which the parties contracted. When so considered there is an expressed intention of something more than a mere consignment of the old car. Even looking alone at the words, "exchange car allowance, consigned for $900," the words "exchange car allowance" are as significant as the word "consigned"; and when considered in connection with the other clause in the contract, "which used car I or we hereby assign, transfer, sell, and deliver to the Superior Motor Company or its order," there is manifested an intention of something more than a mere consignment. As is seen, the dominant factor or subject-matter of the contract is the purchase of a new car by the plaintiff from the company, and in part consideration thereof the plaintiff was to be given an exchange allowance on his old car in the sum of $900.

We think the case of *Trowbridge* v. *Jefferson Auto Co.*, 92 Conn. 569, 103 A. 843, is in point. There by the contract the company had agreed to allow the purchaser $400 on an old car to be applied on the purchase price of a new car. After the old car was delivered to and accepted by the company it notified the purchaser that it could allow only $250 on the old car, claiming that the old car was worth only $250 and that unless the purchaser agreed to such an allowance the company would not carry out the contract, and notified the purchaser to come and get the old car. The purchaser declined to accept the new offer, sued the company, and was permitted to recover for breach of contract. The

court there, among other things, held that a valid contract could not be abrogated or modified unless both parties assented thereto; that where a party to a contract, when the other is not in default, manifests in unequivocal language his intention not to perform the contract unless it is modified he thereby breaches the contract and becomes liable therefor; and where a purchaser traded his old automobile at a fixed price for a new one, the difference to be paid to the company in cash when notified that the new car was ready, and the company asserted it would not deliver the new car unless the credit for the old one was reduced, the purchaser was excused from making tender of the balance.

Though it should be assumed that the contract, as to whether the allowance on the old car was for $900 or whether it was merely consigned to be sold for $900, is somewhat ambiguous, yet, if the ambiguity was one created by the company and not the plaintiff in preparing and drafting the contract, the ambiguity, on the demurrer at least, ought to be resolved against the company and not the plaintiff, unless the ambiguity is such as to be incurable, which on the face of it does not so appear.

Though it be further assumed that the old car was merely consigned to the company for sale, yet the terms thereof were for $900, not $750. Looking at the allegations of the complaint, not anything is alleged that the company claimed that it had used diligence to sell the car for $900 but was unable to do so, or that the best obtainable price was only $750. What is alleged in the complaint is not that, but this: That the company in writing notified the plaintiff "that the said company could not perform the contract as herein set forth," and made a new offer of not to exceed $750 "for the car so taken from the plaintiff as aforesaid, said $750 to be all retained by said company and applied upon the purchase price of a new car" (an offer not to sell or to use reasonable efforts to sell the car for $750 but a fixed allowance not to exceed $750), and on plaintiff's rejection of the offer the company in writing again "refused to carry out

said contract," and made no offer to return or surrender the old car, but retained possession and control of it. Such allegations, considered in connection with the contract itself, are inconsistent with the views entertained and expressed by the trial court and upon which the demurrer was ruled, and, as already observed, whatever the terms or legal effect of the contract may be, the company, as alleged in the complaint, repudiated it and refused to go on with it unless the plaintiff accepted a new offer of a fixed allowance not to exceed $750 for the old car and agreed to apply the whole thereof on the purchase price of a new car. We therefore are of the opinion that the demurrer as to the first cause of action was erroneously sustained.

The judgment of the court below is therefore reversed and the cause remanded, with directions that the action be reinstated, the demurrer to the first cause of action overruled, and the defendants given ten days or such further time as the court may be advised to answer the complaint. Costs to the appellant.

GIDEON, C. J., and THURMAN and FRICK, JJ., concur.

CHERRY, J. I dissent. The agreement set forth in the complaint is somewhat ambiguous and uncertain and contains apparently conflicting clauses. There are some words in the contract which, standing alone, import a sale of plaintiff's car to defendant, but other provisions and the general tenor of the instrument, considered as a whole, quite clearly indicate, in my opinion, an intent and purpose to merely consign the plaintiff's car to defendant for sale at $900 for the use and benefit of the plaintiff. I think the contract admits of no other interpretation. In this view the complaint fails to state a cause of action upon the contract. A case in conversion is not stated. It certainly cannot be said that defendant's failure to offer to return the car which lawfully came into his possession amounts to a conversion. I think the demurrers were good, and that the judgment should be affirmed.