Harry A. Parkinson,

*Plaintiff and Respondent.*

vs.

Fred M. Roberts and Mildred A. Roberts,

*Defendants and Appellants.*

(No. 2789; September 16, 1958; 329 Pac. (2d) 823)

480

For the defendants and appellants, the cause was submitted upon the brief and oral argument of R. G. Diefenderfer of Sheridan, Wyoming.

For the plaintiff and respondent, the cause was submitted upon the brief of Henry A. Burgess and William D. Redle of Sheridan, Wyoming, and oral argument by Austin T. Redle of Sheridan, Wyoming.

Heard before Blume, C. J., and Harnsberger and Parker, JJ.

## OPINION

Mr. Justice Parker delivered the opinion of the court.

This is a suit by a "buyer" of real estate to recover from the "seller" a down payment after the seller had allegedly refused to complete the transaction. The salient facts shown by the record are: On May 19, 1956, plaintiff, Harry A. Parkinson, signed a Standard Purchase Offer, Acceptance and Receipt,[1] offering to buy some thirty-six acres of land for a total price of $32,500: $2,000, deposit; $7,400, cash upon delivery of acceptable warranty deed; balance, $23,100, installment note and mortgage. Defendants, Fred M. and Mildred A. Roberts, the owners of the property, accepted the offer, and D. L. Holcomb, Roberts' real estate agent, signed the instrument as having received

---

[1]Photostatic copy follows case.

the deposit from plaintiff. On June 4 Roberts took the abstract to his attorney, Schwartz, who delivered it to William Redle, an attorney, for examination on behalf of plaintiff. On June 5 Redle wrote a letter to plaintiff, approving title, and sent a carbon copy to Roberts, which copy was delivered June 6. That day the Parkinsons had some conversation with the Roberts about the $7,400. Roberts testified that the plaintiff told him they "just couldn't raise the money and had no way of paying that money until they sold their house in town." Plaintiff admitted this but said he had added the words, "unless I went to the bank to borrow it." Whatever the exact conversation was it is uncontroverted that Roberts refused to take plaintiff's house in trade and stated that he "expected" his money. On June 8 Roberts had his attorney prepare a deed, note, and mortgage; and on June 9 he took them to his agent to conclude the sale. When the agent voiced the view that under paragraph two of the purchase offer the buyer had until the first day of July to pay the money, Roberts took the deed, note, and mortgage to Redle, demanding payment. Redle indicated that his authority was only to examine the title and said that he had to get in touch with plaintiff, then out of town. On the same day, Roberts offered his agent the commission on the down payment provided in the purchase offer, saying he considered the contract to be in default; but the agent refused to accept the money. On June 12 defendants' attorney sent a registered letter to plaintiff notifying him of the termination of said purchase offer by reason of failure "to seasonably complete" its terms, and on June 13 plaintiff delivered to defendants' agent a cashier's check for $7,400 payable to the defendants. The agent discussed the matter with defendants' attorney and on June 14 contacted Roberts who refused the $7,400 payment and

said that if plaintiff could pay him all cash he could complete the deal, otherwise not.

In essence the controversy arose over the different views of the date upon which the buyer was obligated to pay the $7,400. The defendants insist that when the deed was tendered by the sellers after title had been found merchantable the balance of down payment was due immediately and that nonpayment was a cause for termination of the contract and retention of the former down payment as liquidated damages. Plaintiff on the other hand contends that he had until July 1 to complete the down payment.

The trial court found generally for plaintiff and against defendants, entering judgment for the $2,000. From this judgment defendants have appealed, presenting nine specifications of error. These deal primarily with three points: (a) Plaintiff's petition was insufficient to constitute a cause of action and hence the introduction of evidence as well as the granting of a judgment was improper; (b) oral testimony regarding the circumstances surrounding the execution of the purchase offer was erroneously admitted because it permitted parol evidence to vary the terms of a written agreement, and (c) the judgment against defendants was contrary to the evidence and contrary to law.

On the first point, defendants prior to the trial objected to the introduction of any evidence because of the insufficiency of the petition. To the same purpose defendants after plaintiff had rested, and again at the conclusion of all testimony in the case, moved for judgment on the ground of insufficiency of the petition. The court ruled adversely in each instance, and these rulings are here presented as error—it being the view of the defendants that plaintiff had failed to al-

lege any breach of duty by defendants upon which to predicate plaintiff's recovery. To that end defendants urge that the following allegation of plaintiff's petition is a conclusion of law, "although the Plaintiff performed all the conditions upon his part to be kept and performed the Defendants did refuse to keep and perform all the conditions on their part * * *." Similar criticism is applied to other allegations. Plaintiff insists that such statements in the petition are within the meanings of § 3-1413, W.C.S.1945, which reads as follows:

"In pleading the performance of conditions precedent in a contract, it shall be sufficient to state that the party duly performed all the conditions on his part; and if such allegation be controverted, the party pleading must establish, on the trial, the facts showing such performance."

Defendants in their argument make no reference to our statute but cite general authorities which condemn pleadings relying upon allegations by legal conclusion. Such general statements are, of course, to be considered controlling only when there is no applicable statute; and accordingly, we review the pleadings here to have the situation in mind. Plaintiff's allegation that he "performed all the conditions" was positive and without qualification. True, he did not use the word "duly" provided by the statute, which some courts in the past have held to be requisite. It was, however, a much stronger statement than if the word "substantially" had been used as in the case of Lusk Lumber Co. v. Independent Producers Consol., 35 Wyo. 381, 249 P. 790; Id., 36 Wyo. 34, 252 P. 1029. In the light of the relaxation of pleading rules obviating technical niceties, we think a positive pleading of performance meets the conditions which were intended to be imposed when the statute was passed; and plaintiff was,

therefore, not obligated to plead the details of his performance.

There is a further reason why the defendants should not be heard to complain at any deficiency in the petition because of an improper allegation of performance: Where a defendant has repudiated the contract in issue, an allegation of performance by the plaintiff is unnecessary. See Hanby v. Campbell, 222 Ala. 420, 132 So. 893; Waller v. Welch, 154 Va. 652, 153 S.E. 722; 17 C.J.S. Contracts § 538; and 13 C.J. 725-727. The word "repudiate" among other definitions means "to deny the validity * * * of."[2] This is in essence the meaning often recognized by courts when they have discussed refusal to perform, rejection, disclaimer, abandonment, and the like. See Jordon v. Madsen, 69 Utah 112, 252 P. 570; and In re S. M. Goldberg Enterprises, Inc., 130 Misc. 887,225 N. Y. S. 513. In Smith v. Gorsuch, 36 Wyo. 430, 434, 256 P. 664, 665, we said, "If the acts of the defendant showed that he renounced the contract and did not consider himself bound by it, plaintiff had the right to treat the contract as at an end." And see Boswell v. First Nat. Bank of Laramie, 16 Wyo. 161, 92 P. 624, 93 P. 661. In the present case, defendants said that for good cause they had elected to terminate the purchase offer and no longer had any obligation under it. Plaintiff's petition by a reasonable interpretation leaves little doubt that he intended to allege repudiation on the part of the defendants. It would not be either equitable or in accordance with good pleading principles to require him to plead performance when defendants had insisted that performance was not possible.

We turn then to a consideration of the court's rulings which admitted testimony of conversations oc-

[2]Webster's New World Dictionary of the American Language, College Edition, 1957.

curring between the contracting parties prior to the execution of the purchase offer to the effect that Parkinson had to sell his house to raise $7,400 and that he was to have until July 1 to complete the transaction. Defendants urge the well-recognized rule that the terms of a written agreement cannot be altered by parol testimony, citing North American Uranium, Inc., v. Johnston, Wyo., 316 P.2d 325. This rule—correct, although quite broadly stated—is subject to the limitation[3] that oral statements made previous to the time of the execution of a written instrument may in exceptional cases be shown as part of the surrounding facts if they do not contradict or vary the terms of the instrument. See 20 Am.Jur.Evidence §§ 1147, 1160; 32 C.J.S. Evidence §§ 929, 959, discussing exceptions. The trial court recognized and commented upon the parol evidence rule but did not indicate the application thereof in admitting testimony of such conversations between the parties.

The portions of the instrument which seem to have a bearing upon the time of performance are:

(1) "7,400.00 cash upon delivery of acceptable Warranty Deed and Abstract of title showing good merchantable (sic) title."

(2) "Actual possession, or constructive possession by assignment of the Seller's estate in existing leases, shall be delivered to Buyer on or before July 1, 1956," and

(3) "In event of BUYER'S failure to seasonably complete the terms and conditions of this Offer, Buyer

---

[3]Noted in Holly Sugar Corp. v. Fritzler, 42 Wyo. 446, 296 P. 206, 215.

agrees that SELLER may elect to retain the deposit made herewith as fixed and liquidated damages for BUYER'S failure to complete sale as herein provided."

Defendants emphasize the certainty of the first of these provisions, and it is true that this clause taken alone would allow little room for argument. Plaintiff relies upon the second provision which states that possession should be delivered on or before July 1, 1956. This statement, although relatively clear as to happenings after July 1, is not conclusive of the situation in issue here. The third provision, which undoubtedly has some bearing on the other two and certainly on the right of any attempted forfeiture, would seem to be meaningless except as viewed in the light of surrounding circumstances and conversations. All three of these provisions are interrelated and if they are read literally are difficult if not impossible to reconcile. Therefore, we think that the purchase offer was so ambiguous as to require explanation, and the challenged testimony threw some light on the meaning given by the parties to the word "seasonably" without contradicting, varying, or altering the terms of the instrument.

Defendants complain of the admission into evidence of a letter dated June 18 from their attorney, Schwartz, to the Parkinsons in which it was stated that the seller was unable to carry any portion of the sales price. They insist that it was immaterial but cite no authorities to substantiate their position. To us the exhibit seems most relevant for the attorney suggests another arrangement for financing the purchase of the ranch after calling attention to his communication of June 12 wherein the defendants had elected to terminate the original agreement. The letter thus bears on both the attitude and actions of the defendants.

We pass then to a consideration of the argument that the judgment was contrary to the evidence and to law. The defendants contend "Parkinson informed the sellers that he was unable to perform his obligation of further payment promptly and seasonably." We think that this is not a proper interpretation of all the conversation on this subject . According to Roberts, Mrs. Parkinson "said that they were just unable to pay this money, the $7400.00, until they sold their house in town, and Mr. Parkinson said that that was correct; that they just couldn't raise the money and had no way of paying that money until they sold their house in town"; but on cross-examination defendants' attorney asked Parkinson:

"Q. And do you remember telling Mr. and Mrs. Roberts that you couldn't pay this $7400.00 until you had sold your house in Sheridan? A. Yes, unless I went to the bank to borrow it.

"Q. You told them that you would have to sell your place in order to get the money, unless you could borrow it from the bank? A. That's right."

Actually, there was no serious conflict in the above testimony, but in any event, that most favorable to the successful party must be accepted by the appellate court. See Jacoby v. Town of City of Gillette, 62 Wyo. 487, 174 P.2d 505, 177 P.2d 204. It would, there, fore, appear that plaintiff's statement was not such as to constitute a default or excuse defendants from performing their obligations under the purchase offer, and likewise, there was nothing which would foreclose plaintiff from his rights under the instrument. The record shows no renunciation by plaintiff but rather an effort to carry out the terms of the agreement.

Throughout this case it has been urged that there was no seasonable performance by the buyer, but no

cases have been pointed out which are persuasive. "Seasonable," according to Webster's International Dictionary, means occurring in good or proper time; opportune; in keeping with the season or circumstances; timely. We think it means within a reasonable time, considering all of the facts. As we said in Black & Yates v. Negroes-Phillippine Lumber Co., 32 Wyo. 248, 231 P. 398, 401, 37 A.L.R. 1487, "what is a reasonable time depends * * * upon the circumstances of each case." Where there is no statement between the contracting parties that time is of the essence compliance within four days would seem to be seasonable. Here Roberts says that the papers were prepared on the eighth of June and on the ninth were taken to his agent and later to Redle. There was no proof that they were ever delivered to plaintiff or that Redle was plaintiff's attorney for purposes other than the examination of the abstract. Roberts further says that on June 13 he was told that the $7,400 draft was there for him. We are doubtful that defendants proved they delivered acceptable warranty deed to plaintiff; but even if we assume that their giving this to Redle was a delivery to plaintiff, we would hesitate to declare a forfeiture on a time so short. The view of Wyoming courts that forfeitures are not favored was well expressed in Baker v. Jones, 69 Wyo. 314, 240 P.2d 1165, 1171; and as therein indicated, a reasonable time for performance must be granted to a party before a forfeiture will be declared.

Plaintiff's attempt to pay the $7,400 was by cashier's check,[4] which is now said not to be good tender. We have previously held that if tender is refused for reasons other than that it does not constitute an offer of

---

[4]Denominated by Roberts as "draft," and by his attorney as "certified check."

lawful money or is not the kind of money or property in which payment is to be made by the terms of the contract it cannot thereafter be insisted that tender was not good for that reason.[5]   In the present case, the sellers do not contend that they refused the $7,400 because of the form in which it was offered.

The record does not show the judgment to be contrary either to the evidence or to law.

Affirmed.

---

[5]Wright & Co. v. Douglas, 26 Wyo. 305, 183 P. 786; Larsen v. Sjogren, 67 Wyo. 447, 226 P.2d 177.

# Standard Purchase Offer, Acceptance and Receipt

Approved as to form by Wyoming Real Estate Board

Sheridan _____, Wyoming, May 19, _____ , 19 56

Undersigned "BUYER" hereby offers to purchase through you as a licensed Real Estate Broker and as agent of the "SELLER", latter's property situated in ____

Sheridan _____ County, Wyoming, described as

Tracts 8, 9, 10 and part of Tract 11, Roberts Subdivision, being in the SE¼ of Section 22, T55N., R84W., of the 6th P.M., Sheridan County, Wyoming, as same is recorded and on file in the office of the County Clerk of Sheridan County. (Being approximately 36 acres)

Including the release and waiver of all rights of Seller under and by virtue of the homestead exemption laws of the State of Wyoming, together with all buildings and other improvements thereon and all fixtures therein, including but not restricted to following property if in or on the premises at time of sale, the property of the Seller, and not otherwise excluded, to-wit, roller shades, venetian blinds, curtain rods, linoleum, ranges and heaters, storm sash, screens, electric fixtures, **drapes,**

and awnings, for a total PURCHASE PRICE OF $ 32,500.00 on following terms and conditions, to wit $ 2,000.00 deposit with this offer as part payment to be held by Agent pending exchange of final papers, subject to the following contractual conditions, and the balance of the purchase price to be paid as follows. $7,400.00 cash upon delivery of acceptable Warranty Deed and Abstract of title showing good merchantible title, and the Balance of $23,100.00 shall be paid by the execution and delivery of a note, secured by a 1st mortgage on this property, signed by "Buyer" in the amount of $23,100.00, bearing interest at the rate of 6% payable semi-annually, with due date of 10 years after date of signing and providing for principal payments annually in the amount of $2310.00. Note shall provide that it can be paid in full at any time or larger amounts than specified at any annual payment date.

1. All rents, water, gas, electric and sanitation charges; insurance premiums; interest accrued on mortgages or on contract indebtedness, if any, are to be adjusted pro rata as of the date of closing of the sale, and existing leases, if any, and insurance policies if to be assigned Buyer, shall thereupon be assigned and delivered to Buyer.

General taxes for the year 1956 are to be prorated from January 1st to the date of closing of sale, and if the amount of such taxes is not ascertainable the prorating shall be on the basis of the amount of the most recent ascertainable taxes·

All unpaid installments of special improvements assessments now levied and assessed against said premises AND NOW DUE, shall be paid by Seller.

2. Actual possession, or constructive possession by assignment of the Seller's estate in existing leases, shall be delivered to Buyer **on or before July 1, 1956.**

3. All representations made by the AGENT, in the negotiation of this sale have been incorporated herein

4. This offer shall become a mutual contract by SELLER'S written acceptance here below within **one** days from date hereof, is irrevocable until then, if not so accepted shall then terminate and said deposit shall be returned by AGENT to BUYER.

5. Promptly after Seller's acceptance of this offer, Seller shall deliver Buyer or his Agent an Abstract of Title extended to approximate date hereof, or in lieu thereof to furnish Buyer a Title Insurance Policy in the amount of the Purchase Price in a Title Insurance Company approved and authorized to do business in the State of Wyoming, reflecting merchantable fee title in Seller, subject only to (a) Special taxes or improvement assessments for improvements not yet completed, (b) Installments not due at date hereof of any special improvement assessments for improvements heretofore completed (c) Building liens and Building Restrictions of record, (d) Oil or mineral reservations of record, (e) Zoning or Building laws or ordinances, if any, (f) Roads and highways, if any, (g) Rights of Way of record for pipe lines, power and telegraph lines, if any.

6 Buyer shall have 7 days after receipt of such Abstract of Title, or of such Title Insurance Policy for examination of same, exceptions to title, if any, to be immediately delivered in writing to Seller or Seller's Agent, and Seller shall have 30 days thereafter in which to correct such exceptions or to furnish buyer with sufficient assurance that they will promptly be corrected at Seller's expense, and Buyer protected against any related cost, liability or damage  If within said 27 day period required title is not so reflected or assured and protected, BUYER may cancel this offer and in that event AGENT shall concurrently return said deposit to BUYER, and this CONTRACT shall be terminated without further obligation of BUYER  Otherwise, SELLER shall within said period execute and deliver all instruments necessary to complete sale, final transfer of title to be by Statutory form of Warranty Deed

In event of BUYER'S failure to seasonably complete the terms and conditions of this Offer, Buyer agrees that SELLER may elect to retain the deposit made herewith as fixed and liquidated damages for BUYER'S failure to complete sale as herein provided.

/s/ Dr. Harry A. Parkinson

WITNESS: /s/ D. L. Holcomb _____

BUYER

Undersigned Seller accepts the foregoing offer this **19th** day of **May** 19 **56** , has been advised of and will pay to Agent commission as proposed by schedule of Wyoming Real Estate Board, and that in event sale if not completed by Buyer a failure or refusal to do so and Seller elects to accept the deposit made herewith, as above provided, as fixed and liquidated damages, said such deposit, but not exceeding regular commission, shall be divided equally between the Seller and Agent. **Division to be on the basis of $1,500.00 to seller and $500.00 to Agent. The Real Estate Commission to be paid shall be 5%.**

/s/ Fred M. Roberts

WITNESS: /s/ D. L. Holcomb _____ /s/ Mildred A. Roberts

SELLER

Received above mentioned deposit from BUYER, subject to all foregoing contractural provisions, the day and year first above written.

M. W. HOLCOMB & SON

By: /s/ Harl L. Holcomb _____

EXHIBIT "A"