**WESTERN NATIONAL BANK OF LOVELL, Wyoming, Appellant (Plaintiff),**

v.

**J. Doyle MONCUR, R. Dee Cozzens, and Howard Butler, Appellees (Defendants).**

**No. 5336.**

Supreme Court of Wyoming.

Feb. 26, 1981.

Rick Anderson, Powell, signed the brief and appeared in oral argument on behalf of appellant.

Mark L. Reynolds, Lovell, C. Edward Webster, II, Cody, and Robert A. Gish, of Zaring & Gish, Basin, signed the briefs of appellees.

Reynolds and Gish appeared in oral argument on behalf of appellees.

Before ROSE, C. J., and McCLINTOCK, RAPER, THOMAS and ROONEY, JJ.

ROONEY, Justice.

Appellant-plaintiff appeals from a judgment rendered on a jury verdict which denied recovery to it on three promissory demand notes (one by each of the appellees-defendants[1]) totaling $53,786.84, and which awarded damages to appellee Moncur in the amount of $31,000.00 on his counterclaim for breach of contract.

We affirm but modify the judgment to reduce the award of damages to appellee Moncur to $26,000.00.

█ The following recitation of facts is in conformance with the recognized standard for review of evidence on appeal, i. e., to assume evidence in favor of the successful party as true, to leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and to give to the evidence of the successful party every favorable inference which may reasonably and fairly be drawn from it. *Madrid v. Norton*, Wyo., 596 P.2d 1108 (1979); *Cline v. Sawyer*, Wyo., 618 P.2d 144 (1980); *Jelly v. Dabney*, Wyo., 581 P.2d 622 (1978).

In 1972, appellees and Brent Moncur, appellee Moncur's son, formed a partnership,

---

1. Each appellee guaranteed the notes of the other appellees.

Beef Unlimited, for the purpose of operating a cattle feeding business. They planned to avoid the cyclical nature of cattle prices by use of a new hay-cubing system for high feed efficiency and by turning over their cattle inventory two and one-half times a year.

Appellee Moncur's farm became the base of operations. He and Brent Moncur handled the day-to-day operations of the business. Appellees Cozzens and Butler did not contribute cash to the partnership, but strengthened the financial structure of it with the inclusion of their personal assets and credit ratings on financial statements. Appellee Cozzens contributed bookkeeping services and business expertise, and appellee Butler contributed some knowledge of livestock feeding.

Appellant extended a line of credit to Beef Unlimited in the amount of $150,-000.00.[2] Beef Unlimited wrote checks for cattle or feed and then executed six-month promissory notes with appellant to cover the purchases. By May 1973, appellant had extended $146,000.00 of the line of credit to Beef Unlimited, and Beef Unlimited had reached its highest inventory of about 400 head of cattle on feed.

About that time,[3] appellant requested Beef Unlimited to delay purchase of more cattle, and it forced Beef Unlimited to apply all funds from cattle sales to the outstanding notes. Thus, purchase of replacement cattle with a portion of the funds received from such sales was prevented. In 1974, controlling interest in appellant was purchased by Harold Meier. He advised Beef Unlimited that appellant would no longer provide funds for purchase of livestock, i. e., would not continue the line of credit.[4] Refinancing of the outstanding balance of $80,000.00 was discussed, and the outstanding notes were temporarily renewed. Beef Unlimited did not have sufficient collateral to cover the obligation.[5]

Appellee Moncur requested appellant (through Meier) to investigate the possibility of obtaining federal loan guarantees through a federal aid to the beef industry program. Appellant told him that the partnership would not qualify for such. Appellee Moncur later discovered that the partnership could qualify if his real property were considered in the analysis.

Appellee Moncur had financed his personal farming business through appellant. He was advised by appellant that such financing could continue only if his obligation on the Beef Unlimited note were reduced and if his other obligations to the appellant were paid. He was told (by Meier) that appellant would supply operating funds for him if he would refinance his personal obligations to the extent possible, apply funds therefrom to the Beef Unlimited note, and arrange to divide the balance of the Beef Unlimited debt among appellees. This was done. Appellee Moncur obtained refinancing from the Farmers Home Administration.[6] The funds obtained therefrom were used to pay his personal loan from appellant and to pay $26,000.00 to the Beef Unlimited notes. The balance of the Beef Unlimited debt amounted to about $54,000.00, and it was split into the three separate notes[7] upon

2. Appellees' contention that the line of credit was to be for five years was reflected in their pleadings and referred to in the instructions. Testimony to this effect was not elicited at the trial. A former officer of appellant bank testified that it was agreed that the line of credit would be honored "as long as they took care of their part of it."

3. The record is not clear as to exact dates.

4. It appears from the record that prior expressions by appellant in this respect were in the nature of requests to delay operations and not a definite refusal to continue the line of credit.

5. The cattle market fell off severely in the last half of 1974.

6. To obtain FHA financing, it was necessary for appellee Moncur to sell his farm to his son, Brent, inasmuch as appellee Moncur's age disqualified him from obtaining an FHA loan.

7. Individual notes were used to maintain appellee Moncur's loan status below the lending limit of appellant so that farm operational funds could be advanced to him. However, when he attempted to obtain such advances, appellant refused them. Appellee Moncur obtained the funding from another bank.

which this action was initiated. Brent Moncur was thus released from further obligations of Beef Unlimited to appellant.

Appellant words the issues on appeal as follows:

"1. Is the verdict and judgment of the court inconsistent?

"2. Did the court err in allowing oral testimony regarding the events and agreement leading up to and contemporaneous with the execution of those notes dated July 8, 1976?

"3. Did the court err in receiving into evidence charts showing damages sustained by appellees?

"4. Was the verdict of the jury finding that appellant Western National Bank was in breach of contract supported by the evidence?

"5. Did the district court err in refusing to direct a verdict in favor of appellant Western National Bank?

"6. Was appellant Western National Bank entitled to a judgment notwithstanding the verdict?"

The arguments of the parties relative to these issues seem to indicate a misapplication by them of the law and facts of the case as the same pertain to appellant's claim and to appellees' counterclaims. With respect to appellant's claim, the pleadings and pretrial procedure reflect an effort to recover payment on three notes. In the separate answers and counterclaims, appellees Cozzens and Butler set forth affirmative defenses of misrepresentation, fraudulent inducement in the making of the notes and failure of consideration. Appellee Moncur did not set forth an affirmative defense except insofar as his counterclaim can be considered such.

" ' * * * [I]t is the content of the pleading and not the label which determines its nature and effect * * *.' " *Joslyn v. Professional Realty*, Wyo., 622 P.2d 1369 (1981).

" * * * When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Rule 8(c), W.R.C.P.

With respect to the counterclaims, each appellee alleged a breach by appellant of the contract to provide the line of credit with resulting damages from loss of profits. Appellee Butler also alleged damages for appellant's failure "to provide 'Beef Unlimited' with federal assistance." [8] Appellee Cozzens also counterclaimed for damages resulting from slander by one of the appellant's officers, but this counterclaim was dismissed at trial. Appellee Moncur set forth in his pretrial memorandum:

"* * * J. Doyle Moncur sold his farm and applied the proceeds to the debt and all of the Defendants executed notes for their respective shares of the remaining balance, each co-signing the notes of the others. This arrangement was made in reliance by the Defendants on the promise of the Plaintiff, that if the Defendants executed and co-signed said notes, and if the note executed by Defendant J. Doyle Moncur would include Brent Moncur's share of the remaining balance, then Brent Moncur would be released from all obligations of Beef Unlimited to Plaintiff and Brent Moncur and Defendant J. Doyle Moncur would be loaned operating money for their farming enterprise. After the notes were executed according to Plaintiff's specifications, Plaintiff thereafter refused to make the promised operating loan to the Moncurs, forcing them to obtain funds from another lender."

An instruction on the issues was given without objection. It set forth appellant's contentions concerning the execution and delivery of the three notes and the demand for judgment on them for the amounts not paid plus interest. It then set forth appellees' contentions as follows:

"4. Defendants R. Dee Cozzens, J. Doyle Moncur and Howard Butler individually contend that the indebtedness to the bank

---

8. Appellee Moncur included in his prayer a request for judgment for "failure to provide Beef Unlimited with Federal assistance." A prayer is not an allegation of the complaint. *Jones v. Clark*, Wyo., 418 P.2d 792 (1966); and *State v. Moore*, Wyo., 356 P.2d 141 (1960).

was incurred as a result of misrepresentation and breach of contract on behalf of plaintiff and further that no consideration was given for the obligation alleged in plaintiff's complaint. Further, the defendants jointly and individually contend that there was a commitment made for a period of five years by which the plaintiff agreed to provide credit up to a total of $150,000.00 to defendants for a cattle feeding operation and that plaintiff breached this agreement and caused the defendants to liquidate the cattle feeding operation for which defendant R. Dee Cozzens was damaged in the sum of $75,-000.00 and that defendant Howard Butler was damaged to the extent of $25,000.00 and that defendant J. Doyle Moncur was also damaged by plaintiff's forcing defendants to liquidate the partnership.

"5. Further defendants contend that the plaintiff failed to provide the partnership with information concerning possible federal assistance which further damaged the partnership."

The jury verdict reads:

"We the jury with the evidence submitted to us find the Western National Bank was in breech [sic] of contract. Thereby we feel the defendants R. Dee Cozzens, J. Doyle Moncur, and Howard Butler should be released from their obligations on combined notes totaling $53,-789.84, plus interest as of July 8, 1976, to current date, at 10½% per cent [sic] per annum. We find also in the favor of J. Doyle Moncur in the amount of $31,000.00 for personal and property losses."

The verdict reflects an acceptance of appellees' defense of breach of contract to appellant's claim on the notes. It did not provide for recovery by appellees on the counterclaim set forth in the pleadings, pretrial procedure or instructions concerning breach by appellant of a contract to provide a line of credit or failure by appellant to provide information concerning federal assistance. Damages for lost profits were not assessed.

It did allow recovery by appellee Moncur of $31,000.00 "for personal and property losses." Although not identified as an issue in the pleadings or instructions, considerable evidence was presented and received without objection concerning the transaction whereby appellant agreed to provide funds to appellee Moncur for his farm operation if appellee Moncur would refinance his outstanding personal loan with appellant and apply the proceeds to pay the balance on such personal loan, if he would use the excess (which amounted to $26,-000.00) to reduce the amount of the notes of Beef Unlimited, and if he would execute individual notes with the other appellees for the remainder of the amount due on the Beef Unlimited notes. As previously noted, this transaction was included in the pretrial memorandum of appellee Moncur.

Rule 15(b), W.R.C.P., provides:

"(b) *Amendments to conform to the evidence.—When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.* Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; *but failure so to amend does not affect the result of the trial of these issues.* If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such amendment." (Emphasis supplied.)

With this background, we turn to the specific issues raised by appellant in this appeal.

INCONSISTENCY

Appellant argues that the award of $31,000.00 to appellee Moncur is inconsist-

ent with the failure to award any damages to the other appellees. In this respect, it points to Instruction 9 relative to damages for breach of the agreement for a line of credit. Instruction 9 reads:

"The Court instructs the jury that if there was an agreement for a line of credit for $150,000.00 and that the Plaintiff Western National Bank breached that agreement, then the Defendants are entitled to recover from the Plaintiff Western National Bank, sufficient money to compensate the Defendants for those losses suffered by the Defendants which were the natural consequence of the breach of the contract, which were foreseeable by the Plaintiff Western National Bank at the time the agreement was entered into and which are proved with reasonable certainty.

"You are further instructed that the losses suffered by the Defendants which may be compensated include profits which would have been earned by the Defendants were it not for the fact that the Plaintiff Western National Bank breached the contract."

Appellant's argument does not address the fact that the awarded damages could result from a counterclaim other than that for breach of the agreement to provide a line of credit. Once recognized that the award of damages to appellee Moncur was premised on his "personal and property losses" growing out of the counterclaim for breach of the agreement by appellant to continue financing of his farm operation and not out of the counterclaim for breach of agreement by appellant to provide a line of credit for Beef Unlimited, the consistency of the verdict and judgment becomes apparent.

We note again that there was no objection to the introduction of testimony relative to the agreement of appellant to continue financing appellee Moncur's farming operation or to the breach thereof. And no objection was made to the verdict as being inconsistent at the time it was returned.[9] *Chittim v. Armco Steel Corporation,* Wyo., 407 P.2d 1015 (1965).

The verdict and judgment were not inconsistent.

## ADMISSION OF ORAL TESTIMONY

Appellant contends that it was a violation of the parol evidence rule to allow into evidence testimony concerning the agreement relative to providing financing of appellee Moncur's farming operation. The contention is that the three notes set forth the agreement between the parties[10] and that testimony concerning that which led up to the execution of the notes was inadmissible under the parol evidence rule.

Here, again, the distinction must be made between the claim for amounts due on the notes and the counterclaim for damages from breach of an agreement to provide financing for appellee Moncur's farming operation. The jury found a breach of contract by appellant in failing to continue a line of credit for $150,000.00 on behalf of Beef Unlimited set forth as an affirmative defense to appellant's claim. Appellant does not predicate error on parol evidence relative to that contract; therefore, we do not address that potential. The testimony concerning the agreement to provide financing for appellee Moncur's farming operation was not in the nature of negotiations leading up to the execution of the agreement set forth in the notes. It was more. It represented understandings of the parties which were *not* completely integrated into the notes agreement.

"* * * [U]nder the prevailing view, the parol evidence rule does not affect a purely collateral contract distinct from, and independent of, the written agreement, even though it relates to the same general subject matter and grows out of the same transaction, if it is not inconsist-

---

9. We address the propriety of the amount of the award ($31,000.00) in the subsequent section of this opinion titled "Sufficiency of Evidence."

10. The notes reflected that they were a refinancing or rewriting of the Beef Unlimited account.

ent with the writing. \* \* \* " 17 Am. Jur.2d Contracts § 262. See also, 3 Corbin on Contracts § 594; Restatement of the Law, Contracts, § 240 (1932).

"[A]ll previous or contemporaneous negotiations and agreements with reference to the subject matter" were not contained in the notes. There is no inconsistency between the notes and the agreement to provide financing to appellee Moncur's farming operation. The following language from *Lefforge v. Rogers,* Wyo., 419 P.2d 625 (1966) is appropriate to this point, citing from 32A C.J.S. Evidence § 901, the court said:

" ' \* \* \* it is established that, with certain exceptions \* \* \* such as fraud, accident, mistake, or ambiguity, parol or extrinsic evidence is not admissible to vary, add to, modify, or contradict the terms or provisions of the written instrument \* \* \*.

" 'Where the parties have deliberately put their engagements into writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of their engagement, all previous or contemporaneous negotiations and agreements with reference to the subject matter are, or are presumed or considered to have been, merged in, or superseded by, the written contract and the whole engagement of the parties and the extent of their undertaking is conclusively presumed, or at least they are prima facie presumed, to have been reduced to writing. In such cases, the writing is regarded as the only evidence of the agreement \* \* \* ' "

The court then went on to say:

" \* \* \* the encyclopedic statement of the rule clearly provides for 'certain exceptions' which are apparent on the face when it is further stated that the rule is applicable only where the parties have without uncertainty put into writing *all previous or contemporaneous negotiations and agreements with reference to the subject matter.* As plaintiff points out, the same encyclopedic reference at § 997, p. 509, states that the rule excluding pa-

rol evidence to vary or contradict a writing does not extend so far as to preclude the admission of extrinsic evidence to show a valid prior or contemporaneous collateral parol agreement between the parties, which is separate and distinct from, and independent of, the written instrument, has not been merged in, or superseded by, such instrument, and does not contradict, conflict with, or vary the express or implied provisions thereof or deal with a definite and particular subject matter which the written instrument expressly or impliedly undertakes to cover. \* \* \* " (Emphasis not supplied.) Accord, *Parkinson v. Roberts,* 78 Wyo. 478, 329 P.2d 823 (1958); *Allen v. Allen,* Wyo., 550 P.2d 1137 (1976).

In the article concerning sales in the Uniform Commercial Code, the parol evidence rule is expressed as follows:

"(a) Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement *but may be explained or supplemented:*

"(i) By course of dealing or usage of trade (section 1–205 [§ 34–21–212]) or by course of performance (section 2–208 [§ 34–21–215]); and

"(ii) *By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.*" (Emphasis supplied.) Section 34–21–209, W.S. 1977.

The understanding relative to appellant providing financing for appellee Moncur on the condition that he refinance with another his individual obligation with appellant and apply the excess funds to the Beef Unlimited note was in addition to the understanding which existed when the original notes were executed and when the arrangement was made for a line of credit for

Beef Unlimited. Such was a separate agreement.

Under the circumstances of this case, the evidence was properly admitted.

## RECEIPT OF CHARTS INTO EVIDENCE

■ Summary charts were admitted into evidence over appellant's objections. They summarized other exhibits already in evidence relative to income and expenses of Beef Unlimited. Appellant's objection was on the grounds that the information on the charts was speculative and that they were not listed as exhibits during pretrial procedure.

Since the charts had for their purpose to evidence damage resulting from lost profits and since the jury did not assess any damages for lost profits, appellant was not prejudiced by admission of the charts into evidence and his substantial rights were not affected whether or not such admission was proper.

Rule 103, W.R.E. provides in pertinent part:

"(a) *Effect of erroneous ruling.*—Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, * * *."

## SUFFICIENCY OF EVIDENCE

Appellant's last three issues on appeal have to do with the sufficiency of the evidence, i. e.: Was the verdict supported by the evidence? Did the district court err in refusing to direct a verdict for appellant? and Was appellant entitled to a judgment notwithstanding the verdict?

■ We have already summarized the evidence under the standard by which it is reviewed upon appeal. The making of the notes was not controverted. Nor was the nonpayment of them controverted. Evidence of the agreement to provide a line of credit was substantial. The term thereof was questioned, but there was evidence that such was for five years, and the court instructed the jury that appellees had the

burden of proving that appellant breached its contract "to extend a line of credit in the amount of $150,000.00" to appellees. In its verdict, the jury found such a breach. Recovery by appellant on the notes was denied for this reason.

There was also substantial evidence to support the agreement by appellant to provide financing for appellee Moncur's farm operation, and that such was not done after appellee Moncur secured a loan from the Farmers Home Administration and applied funds received therefrom to pay off his personal obligation to appellant and to reduce the Beef Unlimited notes by $26,000.00 —all pursuant to his understanding with appellant. He also transferred the title to the farm into his son's name in order to be able to comply with the terms of his agreement with appellant. On this basis, the jury found in favor of appellee Moncur on his counterclaim for breach of a contract to finance his farm operations, and it awarded him damages in the amount of $31,000.00 for "personal and property losses."

There is a question as to whether or not there was sufficient evidence to support the amount of the award. There was no testimony reflecting damages resulting from the process of securing the loan from another bank. If such loan could not be obtained, undoubtedly such testimony would have been presented. There was no indication that the loan from the other bank was at higher interest rates or with more restrictive conditions.

"The measure of damages for breach of contract is that which would place plaintiff in the same position as he would have been had the contract been performed, less proper deductions. In other words, it is that which will compensate him for the loss which full performance would have prevented or breach of it entailed. * * *" *Reynolds v. Tice*, Wyo., 595 P.2d 1318, 1323 (1979). And see, 22 Am.Jur.2d Damages §§ 46, 47, 68 and 69; 25 C.J.S. Damages §§ 74 and 79e; Restatement of the Law, Contracts §§ 331 and 343 (1932).

The payment by appellee Moncur of the $26,000.00 to appellant was not questioned.

Of the $31,000.00 award, $26,000.00 can be attributed to this payment. But there were no specific figures placed into evidence to reflect the damages, if any, resulting from the forced transfer of title to the farm. Except for the $26,000.00 payment and the forced transfer of the farm, other elements of damage arising from this counterclaim are not indicated.[11]

■ Where one claims damages beyond nominal, he must prove them. *Quinlan v. Jones*, 27 Wyo. 410, 198 P. 352 (1921). See *Colorado Kenworth, Inc. v. Archie Meek Transp. Co.*, Wyo., 495 P.2d 1183 (1972). This is not to say that exact proof of the amount of damages is necessary in all instances. See *Wyoming Wool Marketing Ass'n v. Woodruff*, Wyo., 372 P.2d 174 (1962); *Rocky Mountain Packing Co. v. Branney*, Wyo., 393 P.2d 131 (1964).

" * * * the uncertainty which prevents a recovery is uncertainty as to the fact of the damage and not as to its amount and that where it is reasonably certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery or prevent a jury decision awarding damages. This view has been sustained where, from the nature of the case, the extent of the injury and the amount of damage are not capable of exact and accurate proof. Under such circumstances all that can be required is that the evidence—with such certainty as the nature of the particular case may permit—lay a foundation which will enable the trier of facts to make a fair and reasonable estimate of the amount of damage. The plaintiff will not be denied a substantial recovery if he has produced the best evidence available and it is sufficient to afford a reasonable basis for estimating his loss.

\* \* \* \* \* \*

"The rule that uncertainty as to the amount of the damage will not prevent a recovery does not mean that there need be no proof of the amount of the damage. To authorize a recovery of more than nominal damages, facts must exist and be shown by the evidence which afford a reasonable basis for measuring the plaintiff's loss. The damages must be susceptible of ascertainment in some manner other than by mere speculation, conjecture, or surmise and by reference to some fairly definite standard, such as market value, established experience, or direct inference from known circumstances." (Emphasis supplied.) 22 Am.Jur.2d Damages § 25, pp. 44–46. See *B–W Acceptance Corporation v. Saluri*, 258 Iowa 489, 139 N.W.2d 399 (1966).

There was no testimony whatsoever, opinion or otherwise, pertaining to the loss, if any, resulting from the forced transfer of the farm. Such matters as the understanding between appellee Moncur and his son were not placed in evidence. The value of the farm was not indicated. It could be less than $5,000.00 or considerably more. Without some evidentiary limits for damages, an award is in the area of speculation.

■ Accordingly, we must hold that $5,000.00 of the $31,000.00 award was not sustained by proper evidence. The case is affirmed except for that part of the award of damages to appellee Moncur which is in excess of $26,000.00. The judgment is modified to reflect the award of damages to appellee Moncur to be in the amount of $26,000.00.

Affirmed with modification of judgment.

---

11. There was testimony that appellee Moncur made several payments of $1,500.00 on equipment of Beef Unlimited; that he contributed 1,000 tons of hay to the partnership operation; that he also contributed a large amount of time to it; and that his farm was used for it. However, this testimony was directed at damages resulting from the counterclaim for lost profits from breach of a contract by appellant to continue a line of credit for Beef Unlimited.