The ESTATE OF John N. McCLURE,
Deceased.

Versenoia T. McCLURE and Daniel
Peyton McClure, Co-Personal
Representatives

v.

The UNITED STATES.

Versenoia T. McCLURE

v.

The UNITED STATES.

Nos. 314–78, 315–78.

United States Court of Claims.

Oct. 17, 1979.

Joseph D. Edwards, Tampa, Fla., atty. of record, for plaintiffs; Michel G. Emmanuel, Tampa, Fla., Corrine McClure, Bradenton, Fla., and Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P. A., Tampa, Fla., of counsel.

Iris J. Brown, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant; Theodore D. Peyser, Jr., Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and NICHOLS and SMITH, Judges.

## ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

SMITH, Judge:

In these two cases, consolidated for decision, before the court on the parties' cross-motions for summary judgment, and on which oral argument has been heard, plaintiffs seek a refund of gift tax deficiencies assessed against them by the Commissioner of Internal Revenue and subsequently paid. The question presented is whether the transfer by John N. McClure and Versenoia T. McClure,[1] husband and wife, of beneficial interests in a land trust [2] to members of their family entitles the transferors [3] to the $3,000 annual gift tax exclusion provided by section 2503 of the Internal Revenue Code of 1954 (code).[4] We conclude that the Commissioner properly determined that the transfers of beneficial interests were gifts of future interests which are specifically exempted by section 2503(b) of the code from the annual gift tax exclusion.

### I.

On December 21, 1972, John N. McClure and Versenoia T. McClure transferred a parcel of land comprising approximately 1,260 acres to a land trust by executing a document entitled "Land Trust Agreement" (agreement). Such land trust was created pursuant to and is permitted by Florida State law. Fla.Stat.Ann. § 689.071 (West). Versenoia and John McClure became the sole beneficiaries of the trust, each receiving a 630/1260 beneficial interest in the trust assets. Within 2 weeks of the creation of the trust, Versenoia and John McClure gave minority beneficial interests to members of their family while retaining for themselves over 50 percent of the beneficial interests: on December 28, 1972, they

---

1. The record contains different spellings but it is clear from the signatures that "Versenoia" is the correct one.

2. When referring to "trust," "trustee," and "beneficiaries" in this opinion, we are not indicating that we agree that the "Land Trust Agreement" created a trust. It is not necessary to our decision to decide the classification of the interest created. *Cf. Outlaw v. United States*, 494 F.2d 1376, 204 Ct.Cl. 152, *cert. denied*, 419 U.S. 844, 95 S.Ct. 78, 42 L.Ed.2d 73 (1974) (deciding in the context of the question then before the court that a land trust was taxable as a corporation).

3. The husband died a resident of Florida on April 27, 1977. These suits are brought on behalf of his estate and by the wife, who survives.

4. 26 U.S.C. § 2503(b) (1976) provides:

"(b) Exclusions from gifts—
"In computing taxable gifts for the calendar quarter, in the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1971 and subsequent calendar years, $3,000 of such gifts to such person less the aggregate of the amounts of such gifts to such person during all preceding calendar quarters of the calendar year shall not, for purposes of subsection (a), be included in the total amount of gifts made during such quarter. Where there has been a transfer to any person of a present interest in property, the possibility that such interest may be diminished by the exercise of a power shall be disregarded in applying this subsection, if no part of such interest will at any time pass to any other person."

transferred interests totaling 130/1260ths, and on January 3, 1973, they transferred 200/1260ths of the beneficial interests in the trust assets.[5]

After the two transfers, Versenoia and John McClure together owned the remaining 930/1260 interest, each having a 465/1260 beneficial interest.

Control of the sale, rental, or other management of the real estate was not invested in the trustee, but in the beneficiaries, according to paragraph 11 of the agreement:

11. *BENEFICIARIES MANAGE AND OPERATE TRUST PROPERTY:* The Beneficiaries hereunder, in their own right, have the management of said property and control of the selling, renting and handling thereof, and each Beneficiary or his or her agent or administrator as provided in Paragraph 9 hereinabove, shall collect and handle his or her share of the rents, earnings, avails and proceeds thereof, and said trustee shall have no duty in respect to the management or control, or the collection, handling or application of such rents, earnings, avails or proceeds, or in respect to the payment of taxes or assessments or in respect to insurance, litigation or otherwise, except on written direction as hereinabove provided, and after the payment to said trustee of all monies necessary to carry out said instructions. No Beneficiary hereunder shall have any authority to contract for or in the name of the trustee or successor trustee or to bind the trustee personally.

Nevertheless, these rights of the beneficiaries are limited by other provisions of the agreement. In declaring that the benefici-

aries' rights under the agreement are personalty, paragraph 2 specifically provides that no beneficiary at any time shall have the right to require partition of such real estate:

2. *INTERESTS OF BENEFICIARIES ARE PERSONALTY:* It is understood and agreed between the parties hereto, and by any person or persons who may become entitled to any interest under this trust, that the interest of any Beneficiary hereunder shall consist solely of a power of direction to deal with the title to said real estate and to manage and control said real estate as hereinafter provided, and the right to receive the proceeds from rental and from mortgages, sales or other disposition of said premises, and that such right in the avails of said real estate shall be deemed to be personal property, and may be assigned and transferred as such; that in case of the death of any Beneficiary hereunder during the existence of this trust, his or her right and interest hereunder shall, except as herein otherwise specifically provided, pass to his or her executor or administrator, and not to his or her heirs at law; and that no Beneficiary now has, and that no Beneficiary hereunder at any time shall have any legal or equitable right, title or interest, as realty, in or to any real estate held in trust under this Agreement or the right to require partition of such real estate, but only an interest in the earnings, avails and proceeds as aforesaid. The death of any Beneficiary hereunder shall not terminate the trust nor in any manner affect the powers of the trustee hereunder. No assignment of

---

**5.** The following transfers were made on December 28, 1972:

| | |
|---|---|
| Dr. John N. McClure | 16 |
| Ruth McClure | 20 |
| David McClure | 18 |
| Virginia McClure | 20 |
| Sandra McClure | 8 |
| Scott McClure | 13 |
| Daniel C. McClure | 15 |
| Mary Ann McClure | 20 |
| | 130/1260 |

The following transfers were made on January 3, 1973:

| | |
|---|---|
| Dr. John N. McClure | 20 |
| Ruth McClure | 20 |
| David McClure | 20 |
| Virginia McClure | 20 |
| Sandra McClure | 15 |
| Scott McClure | 15 |
| Daniel C. McClure | 15 |
| Mary Ann McClure | 15 |
| John Neil McClure III | 20 |
| Daniel P. McClure | 20 |
| Corrine McClure | 20 |
| | 200/1260 |

any beneficial interest hereunder shall be binding on the trustee until the original copy of the assignment, in such form as the trustee may approve, is lodged with the trustee and said trustee's acceptance indicated therein, and every assignment of every beneficial interest hereunder, the original of which shall not have been lodged with the trustee, shall be void as to all subsequent assignees or purchasers without notice.

Thus, the beneficiaries at no time, with two exceptions, have any expectancy of possessing the land or any part thereof in kind, but can only act through a majority even to realize the proceeds, if any, of dealing with the land:

10. *POWER OF DIRECTION IN BENEFICIARIES:* It is understood and agreed by the parties hereto and by any person who may hereafter become a party hereto or Beneficiary hereunder, that said trustee will deal with said real estate only when authorized to do so in writing, by the holders of a majority of the interests hereunder, or on the written direction of such person or persons as shall be from time to time given the power of direction in writing by the Beneficiaries holding a majority of the interests as aforesaid. Upon such proper direction by the Beneficiaries the trustee shall make deeds for, or otherwise deal with the title to said real estate, provided, however, that the trustee shall not be required to enter into any personal obligation or liability in dealing with said real estate or to make said trustee liable for any damages, costs, expenses, fines or penalties, or to deal with the title so long as any money is due to said trustee hereunder. Otherwise, the trustee shall not be required to inquire into the propriety of any such direction.

The elimination of any power in the minority holders to deal with the real estate is also effected by the provisions for selection of the "person or persons as shall be from time to time given the power of direction":

9. *APPOINTMENT OF ADMINIS-TRATOR:* The Beneficiaries may from time to time appoint an administrator or agent who shall obtain and furnish all information necessary regarding taxes and assessments, zoning and condemnation, fiduciary tax reports, accountings and insurance upon the trust property. Said administrator or agent may write checks drawn on the trust checking account for payment of all expenses including mortgage payments, if any, preparation of accountings and fiduciary tax reports, legal fees, taxes and assessments, insurance and all other administration expenses. In addition, said administrator may collect any payments received for leasing any portion of the property held hereunder and if ever necessary apply the net receipts toward the next due mortgage payment. Said funds and other funds held hereunder may be invested by the trustee or administrator in interest bearing accounts or otherwise as may be deemed in the best interests of the Beneficiaries or such surplus funds may be distributed to the Beneficiaries in proportion to their interests as set forth herein; in the event of a deficit, such deficit amount shall be paid by the Beneficiaries in proportion to their interests as set forth herein[.] In no event shall the trustee be responsible for any of the foregoing administrative duties, it being the express understanding of all parties hereto that the sole duty of the trustee shall be to hold title to the trust property and deal with such property only upon written direction of the Beneficiaries as set forth below.

From this paragraph it will be seen that any "net receipts" or "such surplus funds" may be distributed proportionately to the beneficiaries; on the other hand, they may not be so distributed, depending upon what is "deemed in the best interests of the Beneficiaries." The minority holders have no control over the selection of the party who is so empowered to "deem." The trustee and first successor trustee are named by the plaintiff donors in the agreement. Any further successor will be chosen by the "person or persons then entitled * * * to direct the trustee in the disposition of the

trust property * * *." That "person or persons," as seen from paragraph 10, is the person or persons chosen by holders of a majority of the interests, or those who themselves hold such majority of interests.

In the event of the failure to name a successor trustee within 10 days of any future event requiring the same, the trustee *may* file suit in court for appropriate relief or *may* convey the trust property to the beneficiaries. Except in this latter potential event of dissolution of the trust, or in the event the majority holders terminate the trust pursuant to paragraph 16, the beneficiaries do not receive the property itself, even upon expiration of the trust:

> 12. *PROPERTY REMAINING IN TRUST TWENTY (20) YEARS FROM DATE OF THIS AGREEMENT:* If any property remains in this trust twenty (20) years from this date it shall be sold at public sale by the trustee on reasonable notice, and the proceeds of the sale shall be divided among those who are entitled thereto under this Trust Agreement. However, if those Beneficiaries holding a majority of the interests hereunder do not want to sell the said estate and terminate the Land Trust Agreement they may extend same for another twenty (20) year period; or in the alternative, create a new Trust Agreement. In this event, if any Beneficiaries who hold a minority in interest wish to sell their interest they may do so by offering same first to the other Beneficiaries and if none wish to purchase such interest then the offer of sale may be made to a third party; the price shall be that which was designated by John N. McClure in an Affidavit when such interest was originally assigned.

The court is not provided a copy of the affidavit referred to, but whatever the price named therein, it is clearly a price imposed on the donees by the donors.

The restrictions upon and provisions for method of assignment of beneficial interests, although lengthy, do not prevent the holders thereof from disposing of their respective beneficial shares.

Federal gift tax returns for the calendar quarters ending December 31, 1972, and March 31, 1973, were filed on behalf of the plaintiffs claiming the statutory exclusion of up to $3,000 for each transfer to the individual family members. In the returns each unit or share of interest was valued at $300 on the basis of that value for each acre of land in the trust. The Commissioner disallowed the exclusions on the ground that the gifts were transfers of future interests in property, and he placed a value of $400 per share on each share transferred, which value plaintiffs now concede. On April 15, 1975, plaintiffs each paid the full amount of the assessed deficiency, plus interest, in the amount of $10,216, or a combined total of $20,432. The timely claims for refund of the deficiencies and interest were denied by the District Director on April 24, 1978.[6] The petitions were filed herein on July 10, 1978, pursuant to 28 U.S.C. § 1491, and this court has jurisdiction.

## II.

■ The Internal Revenue Code does not contain a definition of the term "future interest." It is defined for the purposes of section 2503(b) in 26 C.F.R. § 25.2503–3(a) (1973) which provides that "future interests" are "interests or estates * * * which are limited to commence in use, possession, or enjoyment at some future date or time." This meaning was approved by the Supreme Court in *Commissioner v. Disston*, 325 U.S. 442, 446, 65 S.Ct. 1328, 89 L.Ed. 1720 (1945); *Fondren v. Commissioner*, 324 U.S. 18, 20, 65 S.Ct. 499, 89 L.Ed. 668 (1945); and *Ryerson v. United States*, 312 U.S. 405, 409, 61 S.Ct. 656, 85 L.Ed. 917 (1941). A gift is considered to be a future interest if the right to enjoy the gift is postponed to some time in the future. Enjoyment is postponed if a period of time is interposed between the time the ownership of the gift vests in the donee and the time the donee is permitted to possess the benefits of the gift, or if the gift is subject to a

---

**6.** The refund claim for John McClure was filed by his personal representatives.

contingency. *Id.* For purposes of federal gift taxes, the term "present interest" means the "unrestricted right to the immediate use, possession, or enjoyment of property or the income from the property." 26 C.F.R. § 25.2503–3(b) (1973).

■ There can be no doubt that the beneficial interests transferred by Versenoia and John McClure to members of their family were gifts of future interests. The express provisions of the trust postponed the donees' right to enjoy the fruits of their gifts by prohibiting the corpus from being distributed until the trust expired by its own term at the end of 20 years and, even then, the majority of the owners of the beneficial interests could vote to extend the trust arrangement. Any distribution prior to the natural expiration of the trust was contingent upon the will of the majority. The barrier of time the donors placed between the time the donees' title in the gift vested (the dates of the transfers) and the time the donees had the unqualified right to receive the benefits of the gift, a period which could exceed 20 years, earmarks the gift as a future interest as described in the regulation. *Fondren v. Commissioner, supra*, 324 U.S. at 20, 65 S.Ct. 499. The delayed enjoyment of the proceeds of the corpus disqualifies the beneficial interests as being considered as present interests.

Even disregarding the 20-year-plus life of the trust, the provisions providing that the corpus can be distributed prior to its 20-year term if the owners of the majority of beneficial shares so desire created a "contingency which might never happen" which is fatal to plaintiffs' refund claim. *Ryerson v. United States, supra*, 312 U.S. at 408, 61 S.Ct. 656. In *Ryerson*, the trustee was compelled to make a distribution if ordered to do so by the two beneficiaries. As grounds for holding that the gifts were future interests, the Supreme Court reasoned that the contingency that the two beneficiaries would jointly request distribution postponed their enjoyment until the joint power was exercised at some unknown time in the future. The force of the reasoning in *Ryerson* is even more compelling in this instance.

Unlike the donees in *Ryerson*, any joint attempt of the recipients of the beneficial interests to control the time for distribution of the corpus could be blocked and vetoed by the donors who retained ownership of the majority of the beneficial interests.

Our decision that plaintiffs are not entitled to the annual gift tax exclusion has ample support in the case law. The facts and issues present here are essentially similar to those in *Hamilton v. United States*, 553 F.2d 1216 (9th Cir. 1977); *Blasdel v. Commissioner*, 58 T.C. 1014, aff'd, 478 F.2d 226 (5th Cir. 1973); and *Brody v. Commissioner*, 19 T.C. 126 (1952). In *Hamilton*, the transfer of shares in a land trust created by a document entitled "Partnership and Trust Agreement" was held to be a gift of future interest. The decision in *Blasdel* is directly on point. There, the taxpayers transferred land in trust naming themselves as beneficiaries. Contemporaneously with the creation of the trust, the beneficiaries transferred beneficial shares to 18 family members. The trust instrument made distribution of the income and corpus contingent upon agreement of all the beneficiaries or, failing unanimity, the will of a majority of the beneficiaries plus the majority of the members of the board of directors of a state bank. The court held that these contingencies colored the interests transferred as future interests. The fact that Versenoia and John McClure transferred the beneficial interests to the members of the McClure clan within 2 weeks after they created the trust and not simultaneously with the creation, as did the petitioners in *Blasdel*, is an immaterial distinction. The brief delay in the transfer had no effect on the donees' right to enjoy the gift. Similarly, in *Brody*, the beneficiaries of a land trust were held to have received future interests because their enjoyment of the corpus was delayed until the corpus was to be distributed at the end of 20 years or was contingent upon the trustee's exercise of discretion to terminate at an earlier date.

■ The only present right the donees of the beneficial shares in the McClure land trust received was the right to make a

further transfer of their interests, which transfer carries along with it all of the restrictions imposed on the original beneficiaries. It has long been recognized that every future interest, which is not subject to prohibitions on alienation, has some present value deriving from the right of the owner to transfer the interest, but that acceptance of the right of the donee to dispose of his interest as indicia of a present interest would unduly restrict the statutory meaning of "future interest." *Chanin v. United States*, 393 F.2d 972, 977, 183 Ct.Cl. 840, 850 (1968). The right to sell the interest, standing alone, does not characterize a gift as a present interest.

■ In an attempt to distinguish the overwhelming case law against their position, plaintiffs have analogized the transfers of beneficial interests to the transfer of shares in a corporation and to the transfer of partnership interests.[7] The determination whether a gift is a present or future interest does not depend upon the classification of the interest conveyed. Such an undertaking would obscure our analysis which is limited to deciding whether the gift satisfies the test requiring that the donee receive the present right to enjoy and possess the gift. *Heringer v. Commissioner*, 235 F.2d 149, 152 (9th Cir.), *cert. denied*, 352 U.S. 927, 77 S.Ct. 225, 1 L.Ed.2d 162 (1956) (transfers of corporate shares in a corporation owning farm land held to be gifts of future interests).

■ Plaintiffs have cited *Gilmore v. Commissioner*, 213 F.2d 520 (6th Cir. 1954), for the proposition that a gift to a trustee may constitute a gift of a present interest to the beneficiary where the donee is given an absolute present right to the corpus or income. In essence that is where the problem lies with the land trust agreement here involved. Prior to the transfer, plaintiffs had absolute control over the land constituting the corpus of the trust. The terms of the agreement continue that control in plaintiffs. That fact is of overwhelming significance in view of the fact that we are dealing with a gift tax issue. The McClures' donees received no present benefit, other than the right to make a further transfer of their interest. That benefit is insufficient to qualify the gifts as present interests at the time the gifts vested. We do not presume to pass upon the desirability or possibility of devising new methods of alienation which meet the demands of modern uses of property. We merely say that such methods, in order to meet the requirements of section 2503 of the Internal Revenue Code, must vest in the donee an unrestricted right to the immediate use, possession, or enjoyment of the property. The transfers involved herein were gifts of future interests which do not entitle plaintiffs to the $3,000 gift tax exclusion.

Plaintiffs' motion for summary judgment is denied; defendant's cross-motion for summary judgment is granted; and the petitions are dismissed.

---

7. Plaintiffs have not briefed the reasons they believe exist which support their bare assertions that the transfer of beneficial interests should be treated as transfers of corporate stock or a partnership interest. The validity of the first assertion that a beneficial interest should be viewed as stock is doubtful. In fact, one of the reasons taxpayers transfer land to a land trust rather than to a corporation is to avoid the double taxation which occurs when the corporate vehicle is used. See Weider, *Florida Land Trust: Tax Planning and Problems*, 49 Fla.B.J. 308 (1975). Plaintiffs' failure to show that the McClure land trust had a business purpose makes that position even more questionable. The regulations require this showing to be made before the trust can be considered as an association or corporation. Treas.Reg. 301.7701–2(a)(1), T.D. 6503, 1960–2 C.B. 413. *See also Outlaw v. United States, supra* note 2, where the finding that the land trust had the objective of carrying on a business was a central factor in the court's decision that the land trust, then under consideration, should be treated as a corporation for the purposes of another section of the code.

Though we are not resolving the question of whether shares in a land trust should be treated as partnership interests, we note that plaintiffs' position that beneficial interests are partnership interests has the same flaws as the one presented and rejected in *Outlaw v. United States, supra* note 2, 494 F.2d at 1385–86, 204 Ct.Cl. at 169–70.