912 F.2d 1238
 APPLIED GENETICS INTERNATIONAL, INC., Plaintiff-Appellant,
v.
FIRST AFFILIATED SECURITIES, INC.; American First
Corporation; Jack A. Alexander; Kenneth W.
Elsberry; Richard P. Woltman; and
William J. Patton,
Defendants/Third-
party-
plaintiffs-Appellees,
v.
Norman Jay HAYES, Third-party-defendant-Appellee.
 No. 88-1879.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 29, 1990.
 
 Tom C. Toner, of Redles, Yonkee & Arney, Sheriden, Wyo., for plaintiff-appellant.
 Craig R. Bockman, of Jones, Bell, Simpson & Abbott, Los Angeles, Cal. (Robert A. Graham, Jr., of Jones, Bell, Simpson & Abbott, Los Angeles, Cal., and Paul B. Godfrey, of Godfrey, Sundahl & Jorgenson, Cheyenne, Wyo., with him on the brief), for defendants-appellees.
 Before McKAY and EBEL, Circuit Judges, and KANE, District Judge*.
 EBEL, Circuit Judge.
 
 
 1
 Plaintiff, Applied Genetics International, Inc. (AGI), appeals from a summary judgment in favor of defendants. AGI's suit was brought in diversity and therefore Wyoming substantive law applies. AGI argues that the district court erred in holding that a settlement and release agreement entered into by the parties, after a failed attempt at a public offering of AGI's stock, was valid and barred all of AGI's claims against defendants. Specifically, AGI asserts that the release does not bar its claims because: (1) the release was procured by economic duress and fraud; (2) the release was materially breached by defendants; and (3) the release did not cover claims for torts and breach of contract which occurred after execution of the release. AGI also argues that the district court erred in precluding evidence of oral agreements to show breach of the written release agreement.
 
 
 2
 We hold that summary judgment for the defendant was inappropriate as to the issues of economic duress, material breach, and the scope of the release. However, summary judgment was appropriate for the defendant on the issue of fraud, and the district court correctly precluded evidence of oral agreements to show breach. Therefore, we affirm in part, reverse in part, and remand for further proceedings.
 
 FACTS
 
 3
 AGI was formed by Norman Hayes as a cattle breeding partnership. AGI decided to make a public offering of its stock and discussed with First Affiliated Securities, Inc., (FAS), the possibility of FAS acting as underwriter of the offering. A letter of understanding was signed which tentatively stated that FAS would underwrite the offering on a firm commitment basis.[1] The offering was to yield gross proceeds of $3,000,000.
 
 
 4
 FAS arranged needed interim financing for AGI from El Camino Thrift and Loan (El Camino). El Camino had common directors with FAS and was a subsidiary of San Diego BanCorp which owned a portion of American First Corporation, the parent company of FAS.
 
 
 5
 At the request of Hayes, one day before the financial statements needed for the public offering were to go stale, AGI and FAS met to discuss the underwriting agreement and FAS indicated to AGI, inter alia, that there was insufficient interest in the stock to warrant proceeding with the offering. FAS alleges that AGI promised that Tom Darnell, a potential investor in AGI, would purchase any shortfall in the stock sales and assured FAS that Darnell would not be a statutory underwriter in violation of federal securities laws. Although Hayes admits that he mentioned Mr. Darnell as a possible purchaser, he denies that AGI promised to provide a purchaser of any shortfall in the sale of AGI's stock.
 
 
 6
 The next day, on November 13, 1984, the parties signed the underwriting agreement and set a closing date of November 29, 1984. As the closing date approached, FAS contacted Mr. Darnell and informed him that there was going to be shortfall in the sale of stock and that Mr. Darnell would have to cover the shortfall by purchasing AGI stock. After Mr. Darnell refused to purchase the unsold stock, the closing date of the offering was extended to December 10, 1984.
 
 
 7
 AGI and FAS met several times to determine whether they should proceed with the underwriting. AGI alleges that during those meetings FAS stated that it had not sold the underwriting, that there was no interest in the underwriting, and that it was not going to complete the offering and "break [its] company in order to buy AGI's stock." AGI also alleges that FAS threatened to report AGI to the Securities Exchange Commission (SEC) and to seek a stop order on AGI's registration.
 
 
 8
 During the meetings, AGI explained to FAS that it could not afford further delay in the public offering. AGI was in serious financial difficulty because several creditors, including El Camino, were demanding payment of AGI's debts. Because of its financial difficulties, AGI alleged that it agreed to enter into a settlement agreement with FAS which would release FAS from the underwriting agreement in exchange for financial assistance. The final Settlement and Release Agreement was executed December 7, 1984.
 
 
 9
 The Settlement and Release Agreement states that FAS is released from the original underwriting agreement in exchange for loaning $300,000 to AGI and arranging refinancing or committing funds to pay certain other AGI debts. Although the written agreement does not reflect any additional promises, AGI alleged that FAS also orally agreed to prepare a business plan for AGI, to arrange a loan extension from El Camino, and to complete the public offering in the future.
 
 
 10
 The exact language of the Settlement and Release Agreement is that:
 
 
 11
 AGI hereby fully and forever remises, releases and discharges AFC and FAS ... from any and all claims, known or unknown, suspected or unsuspected, of whatever kind or nature, in law, equity or otherwise, which it has, had, may have had, or hereafter can, shall or may have against the FAS Releasees for or by reason of any fact, matter, contract, right, law, circumstance, cause or thing to and including the date hereof arising out of or pertaining in any way to the Underwriting Agreement and the Oral Agreement.
 
 
 12
 In addition, the agreement states that "unless each of the matters stipulated is resolved and satisfied to preserve AGI's or Hayes', as the case may be, present legal interest in the properties, this Settlement and Release shall be of no force or effect."
 
 
 13
 Because FAS was unable to obtain refinancing of AGI's obligations, it offered to loan AGI the additional funds AGI needed to cover its pressing debts. The necessary loan agreement documents were drafted which gave FAS a lien on all of AGI's assets, except a portion of AGI's land, and imposed restrictions on AGI's business activities. AGI protested to such an extensive lien because at that time the only AGI asset encumbered by liens was AGI's herd of cattle. However, AGI alleged that because of its drastic financial condition, it signed the loan agreement.
 
 
 14
 FAS did not write a business plan for AGI, obtain an extension of El Camino's loan, or complete the public offering of AGI's stock. Eventually, FAS demanded that AGI liquidate its herd of cattle to pay its obligation to FAS. FAS filed an action seeking recovery on the promissory note executed as part of the loan agreement with AGI. Because of demands for payment by FAS and other AGI creditors, AGI filed for Chapter 11 bankruptcy.
 
 
 15
 AGI filed suit against the defendants seeking damages for breach of the written underwriting agreement and breach of oral agreements, common law fraud, economic duress, RICO, securities violations, and inducing breach. AGI sought to set aside the Settlement and Release Agreement on grounds of economic duress, fraud, and material breach. AGI also sought to set aside the loan agreement on grounds of economic duress and fraud. The district court stayed discovery on all issues except the validity of the Settlement and Release Agreement. After discovery on that issue, the district court granted defendants' motion for summary judgment holding that the Settlement and Release Agreement was valid and barred all of AGI's claims. AGI appeals from the summary judgment.
 
 DISCUSSION
 STANDARD OF REVIEW
 
 16
 We review the grant or denial of summary judgment de novo. Barnson v. United States, 816 F.2d 549, 552 (10th Cir.), cert. denied, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987). We apply the same legal standard used by the district court under Fed.R.Civ.P. 56(c) and examine the record to determine if any genuine issue of material fact was in dispute; if not, we determine if the substantive law was correctly applied. Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Gray v. Phillips Petroleum Co., 858 F.2d 610, 613 (10th Cir.1988). However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
 
 ECONOMIC DURESS
 
 17
 AGI argues that summary judgment was improper because AGI entered into the Settlement and Release Agreement under economic duress and that therefore the agreement was invalid. The district court noted that "Wyoming has not recognized that subspecies of duress termed 'economic duress' or 'business compulsion,' " and held that AGI had failed to demonstrate duress. Although some deference will be given to the local district judge's interpretation of Wyoming law, we ultimately engage in de novo review of whether, under Wyoming law, AGI may claim economic duress. See Wilson v. Al McCord Inc., 858 F.2d 1469, 1473 (10th Cir.1988).
 
 
 18
 Under Wyoming law a contract may be cancelled because of duress. Goodson v. Smith, 69 Wyo. 439, 457-59, 243 P.2d 163, 171 (1952). "[D]uress exists whenever a person is induced, by the unlawful act of another, to perform some act under circumstances which deprive him of the exercise of free will." Matter of TR, 777 P.2d 1106, 1111 (Wyo.1989). Therefore, in order to show duress in Wyoming a party must show deprivation of free will because of the unlawful act of another.
 
 
 19
 The Wyoming test for duress is not inconsistent with the test for economic duress developed in those states which have expressly recognized economic duress as grounds for avoiding a settlement agreement. In general the elements of economic duress are: (1) a wrongful act or improper threat; (2) the absence of a reasonable alternative to entering the agreement; and (3) the lack of free will. Centric Corp. v. Morrison-Knudsen Co., 731 P.2d 411, 415-16 (Okla.1986); Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Service Co., 584 P.2d 15, 22 (Alaska 1978); Restatement of Contracts (Second) Sec. 175.
 
 
 20
 To find duress, Wyoming requires a showing of an unlawful act. The term unlawful means contrary to or disregarding the law. Black's Law Dictionary 1377 (5th ed. 1979); Words and Phrases Vol. 43 at 543-551 (1969 & 1989 Supp.). AGI alleges that FAS in bad faith threatened to report AGI to the SEC for alleged federal securities law violations and threatened to breach the underwriting agreement. These acts could constitute unlawful acts. See Restatement (Second) Contracts Sec. 176.
 
 
 21
 The district court cites Campbell v. Prater, 64 Wyo. 293, 191 P.2d 160, 166 (1948), for the proposition that "[a] threat to breach a contract does not constitute duress." However, the district court's interpretation of Campbell is overly broad. The court in Campbell states that in general "a threat to break a contract does not in itself constitute duress. This is on the ground that there is an adequate legal remedy for the breach." Campbell, 64 Wyo. at 312, 191 P.2d at 166. However, the Campbell court, citing Williston on Contracts, suggests further that if an action for breach is not an adequate remedy then "the coercive effect of the threatened action may be inferred." Id. Cf. Greenough v. Prairie Dog Ranch, Inc., 531 P.2d 499, 502 (Wyo.1975) (holding that a payment of a judgment was involuntary and did not destroy the right of appeal). Williston states that:
 
 
 22
 But, though such statements [that a threat will not amount to duress if there is an adequate legal remedy to provide compensation for the injury] are still repeated, the rule is artificial and, so far as it would require a person threatened with injury necessarily to endure the injury because the law provides a remedy for it, cannot be accepted. The inquiry must always be pertinent whether under all the circumstances of each case the remedy is adequate, and the mere fact that it cannot be made effective immediately will often make it inadequate.
 
 
 23
 III Williston on Contracts Sec. 1620 (1920).[2] Therefore, a fair reading of Campbell is that the Wyoming Supreme Court would permit a party to assert duress because of a bad faith threat to breach a contract when the legal remedy is clearly inadequate such that the complaining party had no reasonable alternative to entering into the contract.
 
 
 24
 Whether FAS acted in bad faith in allegedly threatening to breach the underwriting agreement or to report AGI to the SEC is a question for the jury. Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir.1979). Similarly, whether under all circumstances FAS had a reasonable alternative to entering into the Settlement and Release Agreement involves a disputed issue of fact that is dependent on the exigencies of the situation. Totem Marine, 584 P.2d at 22-23. Because of the financial situation that AGI was in when it had to decide whether to enter into the Settlement and Release Agreement, there is a material question as to the reasonableness of any alternative to entering the release agreement that may have caused delay in AGI receiving financial assistance.
 
 
 25
 Related to the question of available options is the issue of whether AGI was deprived of its free will to resist entering into the Settlement and Release Agreement. See Centric Corp., 731 P.2d at 419. The presence of counsel during the negotiations does not automatically preclude a finding of involuntariness. For example, duress was found in Totem even though the plaintiff had been represented by an attorney. See Totem Marine, 584 P.2d at 24-25. The mere presence of counsel would not necessarily cure the economic pressure felt by AGI because of its financial condition allegedly caused by FAS.[3]
 
 
 26
 For these reasons, we hold that the district court erred in granting summary judgment to the defendants on the issue of economic duress. Therefore, we reverse and remand for further proceedings on this issue.
 
 FRAUD
 
 27
 AGI also argues that the Settlement and Release Agreement was invalid because FAS committed fraud in inducing AGI to enter into the agreement. "In Wyoming the elements of an action for fraud have been identified as a false representation by a defendant of material facts which are relied upon by a plaintiff to his damage." Johnson v. Soulis, 542 P.2d 867, 872 (Wyo.1975) (emphasis added) (quoted in Rocky Mountain Helicopters v. Air Freight, Inc., 773 P.2d 911, 918 (Wyo.1989)). Wyoming law requires that "[f]raud must be established by clear, unequivocal and convincing evidence, and will never be presumed." Rocky Mountain Helicopters, 773 P.2d at 919 (citing Kincheloe v. Milatzo, 678 P.2d 855, 862 (Wyo.1984)). Therefore, to succeed on its fraud claim at trial, AGI would have had to prove each element of fraud by clear and convincing evidence. Similarly, the clear and convincing standard must be considered in determining whether defendant's motion for summary judgment should have been granted on the fraud claim.
 
 
 28
 The Supreme Court has held that "the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The Court in Liberty Lobby specifically held that the clear and convincing standard of proof required in that libel action "should be taken into account in ruling on summary judgment motions." Id. at 255, 106 S.Ct. at 2513. Therefore, because Wyoming law requires clear and convincing proof of fraud, we will review the grant of summary judgment on the issue of fraud in light of that standard. Laird v. Laird, 597 P.2d 463, 466 (Wyo.1979) ("Against the backdrop of a motion for summary judgment, fraud must be demonstrated in a clear and convincing manner.").
 
 
 29
 AGI alleges that FAS made six misrepresentations: (1) FAS falsely promised to write a business plan for AGI; (2) FAS falsely promised to assist AGI in a marketing plan for its products; (3) FAS falsely promised to obtain an extension of existing loans; (4) FAS falsely promised to complete the public offering; (5) FAS falsely promised that it did not intend to take over AGI; and (6) FAS falsely stated that it was financially incapable of completing the public offering.
 
 
 30
 The majority of FAS's representations were promises to perform some act in the future. "[A] promise or a statement of one's intention to act in the future, without more, cannot form the basis for an action in fraud" unless the "promise is made with the intention of not performing." Meyer v. Ludvik, 680 P.2d 459, 463 (Wyo.1984). There is insufficient evidence in this record to establish to a clear and convincing standard that these promises were made with the intention of not performing them. As to several of these statements there is also a dispute of fact as to whether AGI relied upon them. As for FAS's alleged statement that it would not "break its company" to purchase AGI stock, AGI failed to show with the requisite clarity that it was a representation by FAS of its financial status made with the intent to induce action. "[G]eneral comments [made during negotiations] are not sufficient to substantiate a fraudulent representation." Reynolds v. Tice, 595 P.2d 1318, 1322 (Wyo.1979) (comment that the purchase was a "good deal" not sufficient to show fraudulent representation). Because of the high standard of proof and AGI's failure to establish each element of fraud, summary judgment in favor of the defendants on the issue of fraud was proper because there exists no genuine issue of material fact.
 
 MATERIAL BREACH
 
 31
 Summary judgment was not proper on the issue of whether defendants materially breached the Settlement and Release Agreement. If one party materially breaches a contract, the injured party is not obligated to perform its promises under the contract. See Williams v. Collins Communications, Inc., 720 P.2d 880, 891 (Wyo.1986). The Settlement and Release Agreement stated that AGI's "present legal interest in the properties" was to be preserved or the agreement "shall be of no force or effect." AGI argues that that provision was meant to preserve the status quo and therefore FAS violated it when FAS encumbered all of AGI's assets as part of the loan agreement with AGI. Prior to the loan agreement between AGI and FAS, the only AGI asset that was encumbered was AGI's herd of cattle.
 
 
 32
 The district court held that the provision was not violated because the term "present legal interest" related only to possession of the property and AGI's possession was not disturbed by the loan agreement with FAS. We disagree.
 
 
 33
 The term "present legal interest" has been used by courts to include more than mere possession. See Maine Sav. Bank v. Bridges, 431 A.2d 633 (Me.1981) (joint tenant with "present legal interest" had present right to possess, use, and enjoy land). The district court itself cites several definitions of "present interest" which refer to the right to use, possess or enjoy the property. See, e.g., Gilmore v. Commissioner of Internal Revenue, 213 F.2d 520, 521 (6th Cir.1954); Black's Law Dictionary 1065 (5th ed. 1979); Restatement of Property Sec. 153(3)(a) (1936). For federal gift tax purposes "present interest" means the " 'unrestricted right to the immediate use, possession, or enjoyment of property.' " Estate of McClure, 608 F.2d 478, 483, 221 Ct.Cl. 570 (1979) (quoting 26 C.F.R. Sec. 25.2503-3(b)). See Maryland Nat'l Bank v. United States, 609 F.2d 1078, 1080 (4th Cir.1980). The term "present legal interest" ordinarily would include the right to use and enjoy the assets and not merely the right to possess them. The loan agreement drafted by FAS appears to restrict severely AGI's ability to use its property for business purposes. For example, the loan agreement imposes a lien on substantially all of AGI's property and it contains multiple negative covenants that prevent AGI from using its property as security on further loans, from selling any of the assets, from declaring dividends to its shareholders, or from entering into any partnership or joint venture. It was inappropriate to grant summary judgment for defendant on the issue of whether FAS materially breached the Settlement and Release Agreement. Therefore, we reverse the district court's decision on this issue and remand for further proceedings.
 
 POST-SETTLEMENT CLAIMS
 
 34
 Granting summary judgment on the issue of the post-settlement claims was also error. Relying on the language that AGI "release[d] and discharge[d] AFC and FAS ... from any and all claims ... arising out of or pertaining in any way to the Underwriting Agreement," the district court found that the release was definite and clearly stated the parties' intention to bar all claims no matter when they arose. However, the court neglected to interpret the phrase "to and including the date hereof" which provides an explicit time restriction on the scope of the Settlement and Release Agreement. In general, a release only covers matters expressed therein which are in existence at the time the release is executed and does not cover subsequent claims. See, e.g., In re Vehm Eng'g Corp., 521 F.2d 186, 188 (9th Cir.1975) (citing 76 C.J.S. Release Sec. 53) (release from "all claims of any kind, nature and description, known or unknown, from the beginning of the world to date" did not cover subsequent claim); Broadview Chemical Corp. v. Loctite Corp., 406 F.2d 538, 541 (2d Cir.), cert. denied, 394 U.S. 976, 89 S.Ct. 1472, 22 L.Ed.2d 755 (1969).[4]
 
 
 35
 Here, the phrase "to and including the date hereof" limits the scope of the release to claims arising prior to, or contemporaneously with, the execution of the release. Because "claim" is defined to include "contract" as well as claims and causes of action, the Settlement and Release Agreement releases FAS from any contractual obligation it may have owed to AGI prior to the date of the release as well as any other causes of actions that may have arisen prior to that time. However, causes of action or contractual obligations that arise after the date of the release are, by the terms of the Settlement and Release Agreement, not released. Therefore, summary judgment is not proper as to the issue of post-settlement claims.[5]
 
 EVIDENCE OF ORAL AGREEMENTS
 
 36
 AGI also challenges the district court's use of the parol evidence rule to disallow AGI's efforts to introduce evidence of oral agreements to broaden the scope of the Settlement and Release Agreement in order to establish that the Agreement was breached. Whether a contract is completely integrated is a question that is to be preliminarily determined by the trial judge. See Restatement of Contracts (Second) Secs. 209(2) comment c & 210. The district court did not err in determining that the agreement was completely integrated. The district court found that the release was completely integrated because it expressly set out the rights and obligations of each party, the language was negotiated and changed, AGI had the opportunity to insert side agreements and did not do so, and the additional oral terms were of the nature that they would have been included in the written contract.
 
 
 37
 Wyoming case law will not allow a party to interject alleged "oral understandings into an agreement where those understandings contradict, alter, add to, or vary the plain terms of the writing." Bethurem v. Hammett, 736 P.2d 1128, 1137 (Wyo.1987) (emphasis added). Wyoming courts depart from the rule only if the evidence is used to establish a separate and distinct contract, a condition precedent, fraud, mistake, or repudiation. Western Nat'l Bank of Lovell v. Moncur, 624 P.2d 765, 770-71 (Wyo.1981).
 
 
 38
 Appellant cites Moncur and Allen v. Allen, 550 P.2d 1137, 1141 (Wyo.1976), for the proposition that parol evidence is admissible to show the portion of an agreement that was not placed in writing if the oral agreement's terms do not contradict or vary the terms of the contract. Reading those cases consistently with other Wyoming case law, they hold that evidence of oral agreements is considered if the agreement does not vary the terms of the writing, Allen v. Allen, 550 P.2d at 1141, or if it is " 'separate and distinct from, and independent of, the written instrument.' " Moncur, 624 P.2d at 771 (quoting Lefforge v. Rogers, 419 P.2d 625 (Wyo.1966)); Cordova v. Gosar, 719 P.2d 625, 640-42 (Wyo.1986). AGI submitted the evidence to show that FAS had breached the release agreement and not to show a separate contract. Moreover, use of the oral agreements as proof of a distinct contract from the written agreement would not render the written Settlement and Release Agreement invalid. A breach of a separate oral agreement would only give rise to an action for breach of the distinct oral agreement. Therefore, AGI would still be bound by the written release.
 
 
 39
 AGI did not attempt to use the parol evidence to show a condition precedent, and condition precedents are not added to contracts by implication. Lewis v. Roper, 579 P.2d 434, 439 (Wyo.1978). The evidence was not used by AGI to show repudiation of the written contract but rather was used to establish additional terms which AGI argues have been breached. Although parol evidence can be admitted to show fraud, as discussed above, the evidence did not establish fraud. Therefore, the evidence could not be considered on summary judgment to add terms to the release agreement. Laird, 597 P.2d at 466; Johnson v. Soulis, 542 P.2d 867, 872-73 (Wyo.1975). The district court correctly invoked the parol evidence rule to prevent incorporation of the alleged oral agreements into the written release.
 
 CONCLUSION
 
 40
 In summary, we reverse the district court's granting of summary judgment on the issue of economic duress. We affirm the district court's granting of summary judgment on the issue of fraud. We reverse the district court's granting of summary judgment on the issues of material breach and whether the scope of the release included post-settlement claims. We affirm the district court decision not to consider parol evidence of alleged additional terms of the written release. Therefore, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable John L. Kane, District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 A firm commitment offering has been defined as follows:
 In a "firm commitment" underwriting agreement, the underwriters agree that they will purchase the shares being offered for the purpose of resale to the public. The underwriters must pay for and hold the shares for their own account if they are not successful in finding public purchasers. This form of underwriting is almost always used by the larger underwriters and provides the greater assurance of raising the desired funds.
 R. Jennings & H. Marsh, Jr., Securities Regulation 135 (6th ed. 1987).
 
 
 [2]
 Because there is a 1937 and 1920 edition of Williston on Contracts, it is unclear upon which edition the Campbell court relied. However, the language in the 1937 edition is identical to that in the 1920 edition. The 1970 edition is consistent with the earlier edition. Section 1621 states that:
 The rule that a mere breach of contract will not amount to duress, presumably based on the fact that an alternative remedy is available, still finds statement.... Yet, this rule is not an absolute one and many courts will find the available legal remedy inadequate where the breach would result in an immediate irreparable loss to business or property interest. The remedy would also be inadequate where time is of the essence.
 
 
 [13]
 Williston on Contracts Sec. 1621 (3d ed. 1970) (footnotes omitted)
 
 
 [3]
 FAS argues that because FAS did not cause AGI's financial difficulty, economic duress cannot be found. See W.R. Grimshaw Co., 248 F.2d 896, 905 (8th Cir.1957), cert. denied, 356 U.S. 912, 78 S.Ct. 669, 2 L.Ed.2d 585 (1958); Totem Marine, 584 P.2d at 21. For purposes of considering this summary judgment order, we do not need to determine if Wyoming would adopt this limitation on the claim of economic duress because here there is some evidence that AGI's financial trouble did result from FAS' failure to complete the public offering which would have provided the funds to pay off AGI's creditors
 
 
 [4]
 Because we find that the language of the release agreement does not bar post-settlement claims, we do not need to reach AGI's additional arguments that the release was an improper exculpatory clause or that the release was invalid as to willful and intentional misconduct
 
 
 [5]
 The defendants do not argue on appeal that the language in the release agreement bars post-settlement claims but argue instead that AGI did not properly plead the claims as post-settlement claims. See Appellees' Br. at 31-33. Defendants' argument that the claims were not properly pleaded as post-settlement claims is best dealt with on remand