**UNITED STATES COURT OF APPEALS**
**Filed 4/3/96**
**FOR THE TENTH CIRCUIT**

_____

| | |
|---|---|
| JESSE LEE HOWELL, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | )     No. 95-5093 |
| | )  (D.C. No. 92-C-81-K) |
| UNITED STATES OF AMERICA, | )   (N. Dist. of Okla.) |
| | ) |
| Defendant-Counterclaim Plaintiff- | ) |
| Third Party Plaintiff-Appellee. | ) |
| | ) |
| v. | ) |
| | ) |
| DANIEL L. NICHOLS and SYDNEY NICHOLS, | ) |
| | ) |
| Third Party Defendant-Appellant. | ) |

_____

**ORDER AND JUDGMENT**[*]

_____

Before **PORFILIO, BARRETT, and LUCERO,** Circuit Judges.

_____

Jesse Lee Howell (Howell) appeals from an order of the district court denying his motion for summary judgment and granting summary judgment in favor of the United States of America.

In 1981, Howell purchased Speedprint No. 1 from M. W. Pickett,

_____

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of Tenth Cir. R. 36.3.

the owner of the Speedprint franchise. The business was incorporated as J.D.S. Systems, Inc. (JDS). It engaged in commercial printing and typesetting. Howell was the President and sole shareholder of JDS. Daniel Nichols, husband of Howell's sister, Sydney, was a JDS salesman. In 1983, Daniel was elected Vice-President of JDS.

On January 1, 1984, Howell and his wife (designated "seller") entered into an agreement to sell JDS to Daniel and Sydney (designated "purchaser") for $120,000. Daniel was elected President of JDS and Howell Vice-President. Howell remained a member of the board of directors. The agreement provided that: the purchaser would receive 50% of the JDS stock; distribution of profits would be made from time to time at the discretion of seller and purchaser; seller and purchaser would each receive an annual salary of $70,000; seller was entitled to examine and inspect the books, records, and accounts of the corporation; and, seller would receive a monthly recap report from purchaser. The agreement also provided that: no money would be borrowed against JDS unless agreed upon in advance in writing by seller and purchaser; any purchases, except for materials and supplies, must be agreed to by seller and purchaser; and, purchaser could acquire the remaining 50% of JDS stock after a ten-year period.

The agreement was amended on September 7, 1984, to provide, inter alia: a reduction in Howell's salary, a salary for Sydney for

bookkeeping and typesetting, and a monthly car allowance of $789.83 for seller and purchaser for 29 months. On that same date, a corporate resolution of J'S authorized any one of Daniel Nichol, Sydney Nichol or Jesse Howell to write checks on the corporate checking acocunt.

The agreement, as amended, was modified on January 31, 1986, wherein the parties acknowledged that JDS was having financial difficulties, it was in the best interest of both parties that JDS survive, and without financial concessions from the Howells, JDS would be forced to liquidate and file bankruptcy. Under the modification, Howell waived any further salary and he resigned from the board of directors, effective immediately. It also provided that 100% of the JDS stock would be released to the Nichols, free and clear of any liens, upon payment of $165,000.

During the third and fourth quarters of 1985 and the first quarter of 1986, JDS did not remit the federal withholding taxes due the United States. On July 28, 1986, the Internal Revenue Service (IRS) assessed Howell and the Nichols $31,890.15 as responsible persons under 26 U.S.C. § 6672 for JDS's employment tax liabilities. Under § 6672, "[a]ny person required to collect . . . and pay over any tax . . . who willfully fails to . . . pay over such tax . . . shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded . . . or not accounted for and paid over."

In 1988, the Nichols submitted amended tax returns on behalf of JDS in which they attempted to eliminate the § 6672 liability by stating that JDS had erroneously reported as wages certain payments made to Howell when in fact the payments should have been characterized as proceeds from the sale of stock.

Howell subsequently filed an action seeking a refund of the $868.92 payment he had made toward the § 6672 assessment and to have the balance of the penalty abated. In response, the government filed a counterclaim against Howell for the unpaid balance of the penalty, plus interest and statutory costs. The government filed a similar counterclaim against the Nichols. The parties moved for summary judgment.

In its order granting the government's motion for summary judgment, the district court observed, <u>inter</u> <u>alia</u>: JDS failed to pay employment taxes for the time period in question; for summary judgment to issue in favor of the government it must prove that the taxpayers were "responsible persons" for JDS under § 6672 and that the taxpayers willfully failed to pay JDS's employment taxes; Howell and the Nichols could prevail on their motion only "if they establish that the tax returns filed by JDS during the period at issue erroneously classified payments made for the purchase of stock as payments made for salary." (Corrected Appendix to Opening Brief of Appellant, Part A at 6).

The court also found/concluded: the Nichols do not dispute

- 4 -

that they are responsible parties under § 6672; "[t]he evidence . . . shows that Howell instructed JDS to give payment priority to his salary, with other creditors receiving a lower priority. Howell could have instructed JDS to pay the IRS first, and then his salary, but he did not." Id. at 16; Howell "expressed a preference as to which [creditors] should be paid" and "attempted to influence the Nichols' decision-making by means of violent threats." Id.; Howell "crossed the threshold of § 6672 . . . [and] became a 'responsible person.'" Id. at 17; although the government agrees that Howell threatened the Nichols with harm if his payments were not made, "[t]he court does not find that threats negate willfulness as used in § 6672." Id. at 18; Howell "had access to the company's books and accounts, and . . . notice of the tax delinquencies. . . . [and] it [is] the combination of factors, including Howell's role in determining the company's payment of creditors, which requires the court to impose responsibility on him." Id. at 21; and, the amended tax returns submitted by JDS did not effectively reclassify the salary payments made to Howell as payments for stock. Howell and the Nichols appealed.[1]

On appeal, Howell contends that the district court erred in granting summary judgment by failing to recognize the existence of genuine issues of material fact which precluded summary judgment in

---

[1]After briefs had been submitted but prior to oral argument, the Nichols settled with the government.

favor of the government. The government responds that there were sufficient undisputed facts to support summary judgment in its favor.

## I.

We review the district court's grant of summary judgment <u>de novo</u>, <u>Ellis v. United Airlines</u>, 73 F.3d 999, 1003 (10th Cir. 1996), applying the same legal standard used by the district court under Fed.R.Civ.P. 56(c). <u>Crow Tribe of Indians v. Repsis</u>, 73 F.3d 982, 986 (10th Cir. 1995). Even though all the parties moved for summary judgment, this does not change the district court's consideration or our standard of review. <u>E.E.O.C. v. Steamship Clerks Union, Local 1066</u>, 48 F.3d 594, 603 n.8 (1st Cir.), <u>cert. denied</u>, ___ U.S. ___ (1995). Although cross motions for summary judgment were filed by the parties, this did not permit the entry of summary judgment if disputes remained as to material facts. <u>Harrison Western Corporation v. Gulf Oil Co.</u>, 662 F.2d 690, 692 (10th Cir. 1991). <u>See also</u> <u>Cargill Inc. v. Charles Kowsky Resources, Inc</u>., 949 F.2d 51, 55 (2nd Cir. 1991) ("Even though both parties move for summary judgment and even though they agree that there are no issues of fact, the court may still find that factual issues exist.").

## II.

Howell contends that the district court erred by deciding the issue of his status as a responsible person under § 6672 on the

government's motion for summary judgment rather than allowing the matter to proceed to trial.  He argues that there existed genuine issues of material fact, including  who controlled JDS's finances, and who had the power to determine which of JDS's creditors would be paid, which made summary judgment improper.

"Courts have generally given broad interpretation to the term 'responsible person' under § 6672."  Denbo v. United States, 988 F.2d 1029, 1032 (10th Cir. 1993).  In Denbo, we held:

> A person is responsible with the meaning of the statute if that person is required to collect, truthfully account for or pay over any taxes withheld from the wages of a company's employees. . . .  The responsible person generally is, but need not be, a managing officer or employee, and there may be more than one responsible person. . . . Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees. . . . Among other things therefore, a corporate officer or employee is responsible if he or she has significant, though not necessarily exclusive, authority in the 'general management and fiscal decision making of the corporation.'
>
> *          *          *
>
> [W]hile it is clear that [the president] exercised greater control over the corporation than Denbo, '[s]ection 6672 does not confine liability for the unpaid taxes only to the single officer with the greatest or the closest control over corporate affairs.' . . . It suffices that Denbo had 'significant, as opposed to absolute, control of the corporation's finances.'
>
> *          *          *
>
> A responsible person's failure to investigate or to correct mismanagement after being notified that withholding taxes have not been paid satisfies the section 6672 willfulness requirement.

- 7 -

988 F.2d at 1032-33 (citations omitted).

See also Taylor v. Internal Revenue Service, 69 F.3d 411, 416 (10th Cir. 1995)(person with sufficient indicia of responsibility is a responsible person under § 6672 regardless of whether he has final say as to which creditors should be paid); Muck v. United States, 3 F.3d 1378, 1381 (10th Cir. 1993)(the existence of significant, though not necessarily exclusive authority, "irrespective of whether that authority is actually exercised, is determinative" of whether a corporate employee or officer is a responsible person under § 6672).

"'[S]ummary judgment is appropriate [only] when there is no genuine issue over a material fact and the moving party is entitled to summary judgment as a matter of law' . . . [and] 'we must view the record in the light most favorable to the parties opposing the motion for summary judgment.'" Crow Tribe, 73 F.3d at 986 (citations omitted).

In concluding that Howell was a responsible person under § 6672, the district court relied on the undisputed facts that: Howell was an officer and director of JDS, Howell owned 50% of JDS stock, and Howell had check writing authority for the corporation. The court also relied on various provisions within the sales agreement: all profit distributions were at the discretion of both the seller and purchaser; seller had the right to examine and inspect the books, records, and accounts of JDS; seller was to be

supplied a monthly recap report sheet for JDS; all money borrowed by JDS had to be agreed upon in advance by the seller and purchaser; and any purchases, excluding materials and supplies, were to be agreed upon by the seller and purchaser.

The district court further considered and relied upon, inter alia: the testimony of the Nichols and M. W. Pickett that Howell threatened to kill Daniel if he was not paid in accordance with the sales agreement in finding that "[m]ortal threats by a director and vice-president of a company against the president of that company are indicative of an effort to control the payment of funds to creditors," (Corrected Appendix to Opening Brief of Appellant, Part A at 11-12); Daniel's testimony that Howell controlled the books for a period of time after the sale, in finding that "[i]n actuality, for much of a year, Howell may have enjoyed greater access to the JDS's records than its owners," id. at 14-15; the testimony of the Nichols that Howell consulted with them about which creditors to pay in finding that "Howell could have instructed JDS to pay the IRS first, and then his salary, but he did not," and that "Howell was in a position to prevent the default from occurring. . . ." Id. at 15-16.

The court relied on these findings in concluding that Howell was a responsible person under § 6672. However, not all of these findings were based on undisputed facts. It is undisputed, however, that in terms of control or the right to exercise control

over JDS during the time period here involved, Howell served as vice-president, director and a 50% shareholder of the corporation at all times in 1985. In addition, the Purchase Agreement provided Howell with substantial authority over distribution of profits, borrowing, purchases, the right to inspect JDS's books and records, and to receive a monthly recap report. During the entire period at issue, Howell also exercised check writing authority over the corporate checking account.

We agree that these undisputed facts justified the district court's conclusion that Howell was a responsible party with respect to JDS, and thus under a duty to collect and pay over the federal income and social security taxes withheld from the wages of JDS's employees to the government. Responsibility is a matter of status, duty, and authority.

We hold that the district court did not err in concluding that Howell was a responsible person under § 6672.


                                III.

Howell contends that "the district court erred when it failed to recognize the existence of the unresolved genuine disputes of material facts regarding [his] alleged wilful [sic] failure to pay JDS Systems, Inc.'s employment taxes under the meaning of I.R.C. § 6672." (Corrected Opening Brief of Appellant at 21). He argues that because the issue of his willful failure to pay the

withholding taxes was in dispute, and inasmuch as the district court "appears to have written an order for a trial that has yet to take place," the order of the district court granting summary judgment in favor of the government must be reversed and the case remanded for trial. Id. We agree.

In Thomas v. International Business Machines, 48 F.3d 478, 484 (10th Cir. 1995), we held that the party moving for summary judgment has the burden of showing that there is an absence of evidence to support the non-movant's case, and that the court must examine the factual record and all reasonable inferences in the light most favorable to the non-movant. Here, the government cannot point to the absence of evidence to support Howell's contention that he did not act willfully under § 6672. Furthermore, the district court failed to examine the factual record in the light most favorable to Howell in granting the government's motion for summary judgment on the issue of Howell's willfulness. In TPLC, Inc. v. United Nat. Ins. Co., 44 F.3d 1484, 1489 (10th Cir. 1995), we held that at the summary judgment stage, the court may not weigh the evidence to determine the truth, but rather must decide only whether there is a genuine issue for trial. If the district court is required to adjudicate factual issues, the case is not ripe for summary judgment. IBEW Local Union No. 969 v. Babcock & Wilcox, 826 F.2d 962, 964 (10th Cir. 1987). Here, the district court did adjudicate factual issues.

If the moving party shows the absence of a genuine issue of material fact upon a motion for summary judgment as required under Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the non-movant "may not rest upon mere allegations or denials" of the pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), but must produce evidence creating a genuine issue of material fact to be resolved at trial. Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995). Here, Howell's depositional testimony is at complete odds with the government's contentions on the issue of his willfulness under § 6672. This creates a credibility issue for trial determination. See Applied Genetics Intern., Inc. v. First Affiliated Securities, Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). Anderson observed that a fact is "material" only if it "might affect the outcome of the suit under the governing law" and the dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." 477 U.S. at 248. Howell's depositional testimony created a credibility issue for trial determination by the fact finder.

Howell's depositional testimony disavowed any association with JDS and any knowledge of JDS's tax problems during the third and fourth quarters of 1985 and the first quarter of 1996:

Q. The third and fourth quarter of '85 and the first quarter of '86. That's why we are here, and those are the taxes that weren't paid, and that's the issue of the case. Do you understand that?

A. Okay. Yes, I do.

- 12 -

Q. Who was running the company in that period at issue?

A. Danny Nichols ran the company from the time I sold him and he became president, in that period.

Q. Okay.  What was your role in the company?

A. Really I had no role in the company whatsoever.  I had told Danny that I would help him with any problems that I could, and I lived on the farm and took care of and was trying to build my place up there, is what I was trying to do in this period of time.

Q. So you basically just told him that you would help him if he needed any help?

A. That's right.

Q. Did you do anything else with respect to the company?

A. No, sir.

Q. Did you go onto the company premises?

A. Not that I can remember.  I might have at one time or another or something, but you know, it wouldn't have been on a regular basis.

                    *          *          *

Q. During that period at issue, though, did you write any checks?

A. From the time that --- no, I did not.

Q. So Danny and Sydney wrote the checks?

A. Yes, they did.

                    *          *          *

Q. So your answer is that, during the period at issue, you didn't receive any financial information?

A. No, sir, I did not.

Q. Did they tell you that the taxes weren't being paid during that period?

- 13 -

A. No, sir, they did not.  I was not aware of the tax problem that they had.

Q. They didn't tell you that they were having problems with the taxes?

A. No, they did not.

Q. Did you know that the company was having financial problems?

A. No more than it ever did.  I always had, you know, I'd have a good month and I'd have a rough month, and I'd have, you know, its ups and downs, but I always made good money.

Q. But during the period at issue, did you know that the company was having financial problems?

A. When I went to Danny's house, I was pretty well under the understanding that there was something  wrong, yes, and at that point Danny and I didn't communicate on anything.  He handled everything himself.  They did not communicate with me, they did not send me financial statements.  I had no way of knowing what the business was doing.

Q. But you knew it was in trouble?

A. Well, I knew that they weren't paying me, so, you know, that's all I knew.

                    *            *            *

Q. . . . . Did you ever threaten Danny personally on paying the notes?

A. I'd have to answer that no. . . . I was raised that if you have an argument you go outside and settle it, you know, but did not threaten --

(Corrected Appendix to Opening Brief of Appellant, Part A at 13-14, 21-22, 25).

Howell is liable under § 6672 only if he "willfully" failed to comply with the statute.  In <u>Denbo</u>, we defined "willfulness"

- 14 -

to be:

> Willfulness, in the context of section 6672 means a 'voluntary, conscious and intentional decision to prefer other creditors over the government. . . .' Although negligence does not give rise to section 6672 liability, "'the willfulness requirement is ... met if the responsible officer shows a "reckless disregard of a known or obvious risk that trust funds may not be remitted to the government. . . ."'" A responsible person's failure to investigate or to correct mismanagement after being notified that withholding taxes have not been paid satisfies the section 6672 willfulness requirement. . . .

788 F.2d at 1033 (citations omitted).

Applying these standards, and mindful that summary judgment is appropriate only "when there is no genuine dispute over a material fact," we hold that the district court erred in finding/concluding that Howell acted "willfully" for purposes of § 6672. Howell testified that he did not have any role in JDS whatsoever during the time in question and that he did not have any knowledge of JDS' tax problems. Howell's testimony created genuine disputes of material facts, rendering the district court's finding/conclusion of willfulness on the summary judgment motion improper.

IV.

Howell contends that the district court erred when it relied heavily on inadmissible hearsay in granting summary judgment in favor of the government. We elect not to reach this issue in view of our holding that the district court erred in granting the government's motion for summary judgment on the issue of Howell's willfulness.

- 15 -

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings.

                              Entered for the Court:

                              James E. Barrett,
                              Senior United States
                              Circuit Judge